JOSEPH DOUBET, for the use of the taxpayers of the Inde-
    pendent School District of Clearfield, Appellee, v. THE
    BOARD OF DIRECTORS OF THE INDEPENDENT DISTRICT
    OF CLEARFIELD, Taylor County, Iowa, Appellant.

Schools: LOCATION OF SITE. Power to locate a school site is
1  vested exclusively in the school board, and on appeal the juris-
    diction of the County and State Superintendent is limited to
    a review of the action of the board; they have no authority
    to establish a new site nor may they impose conditions which
    were not presented to and acted upon by the board.

Same: RELOCATION OF SITE. Where there has been a material
2  change in conditions subsequent to the location of a school
    site the board may select a new location.

Same: MANDAMUS. To sustain an action of mandamus compeling
3  a board of school directors to cancel from its records certain
    resolutions changing the location of a school house site from
    that fixed by the County and State Superintendent, it must
    appear that the board had no authority or jurisdiction to make
    the order; otherwise appeal is the remedy.

*Appeal from Taylor District Court.*— HON. H. M. TOWNER,
                            Judge.

                TUESDAY, APRIL 2, 1907.

    REHEARING DENIED MONDAY, JUNE 10, 1907.

    THIS is an action of mandamus to compel the board of
directors of an independent school district to cancel and ex-
punge from its record certain resolutions adopted by the
board changing a school site from a place designated by the
State Superintendent of Public Instruction to a place se-
lected by said board, and to compel the said board to erect
a schoolhouse on the site selected by the State Superintendent.
The trial court granted the relief asked, and defendant ap-
peals.— *Reversed* and *remanded*.

*Haddock & Sons,* for appellant.

*W. M. Jackson* and *J. R. Plummer,* for appellee.

DEEMER, J.— In May, of the year 1904, the defendant Board of Directors decided to build a new schoolhouse, and to change the location thereof from the old site to a new one. Two new sites were offered, and the matter of choice as between them was left to a vote of the electors. At the election one hundred and six votes were cast for what we shall call site " A," and one hundred and three votes for what we shall denominate site " B." Pursuant to the vote a majority of the board confirmed the selection of site A. From this order plaintiff and others appealed to the County Superintendent, and upon a hearing before him a reversal was had, and, although questioning his authority to do so, he suggested a site for the new schoolhouse which differed in some respects from site B, but included, as we understand it, a part of that site. As this decision did not correspond with the claims of any of the parties, he divided the costs between the parties to the appeal. The board of directors appealed to the State Superintendent, who after a hearing sustained the action of the County Superintendent, but made some changes in the conditions with reference to the drainage of the land selected and the opening of some adjacent streets. He also ordered a division of the costs. After this decision was rendered, there having been a change in the law since the vote of the electors was taken, the Board of Directors submitted to the electors a proposition for the issuance of double the amount of bonds theretofore voted for the erection of the schoolhouse upon the site fixed by the State Superintendent. This proposition was defeated. Thereupon an election was held to vote additional bonds for the erection of a schoolhouse upon the old, or original site, but this, too, was defeated. It is conceded by every one that the issuance of the new bonds is necessary to the erection of a proper schoolhouse.

After these fruitless efforts, the State Superintendent wrote the board, saying that if he could be convinced that the people would unite on some new site, and would vote bonds to build thereon, he would modify his original decree and adopt such new site.   Thereupon a petition was presented to the State Superintendent, signed by a large majority of the legal voters, asking him to direct the board to locate the schoolhouse upon a block of ground just south of the old schoolhouse.   Notice was given to parties in interest, and some of the plaintiffs thereupon secured an order from the District Court of Polk County, preventing the State Superintendent from acting further in the premises.   Thereafter, defendant Board having concluded that a schoolhouse could not be built upon the site selected by the County and State Superintendent, upon its own motion selected the site petitioned for by the petitioners to the State Superintendent. In the resolution for that purpose it is recited that the conditions had so changed since the site was selected by the State Superintendent that, in the judgment of the Board, it was necessary to abandon all former sites and to select a new one. From this action no appeal was taken.   The Board thereupon let a contract for the erection of a schoolhouse upon the site finally chosen, and this action was then brought to cancel and expunge the resolution just referred to.   An injunction was secured in aid of the action, and no further proceedings were had by the Board.   The trial court granted the relief prayed, and directed the defendant Board to erect a schoolhouse upon the site established by the State Superintendent, and defendant appeals.

The decision below was based upon two grounds:  First, that the decision of the State Superintendent was final; and, second, that there was no such change in conditions after the decision of the State Superintendent as justi-
1. SCHOOLS:
   location of
   sites.
fied the board in making the last order.   It is true, of course, that the decision of the State Superintendent is final upon any matter properly before him

and within his jurisdiction, and it is also correct to say that ordinarily the change of conditions which will justify a board in selecting a new site must occur after the decision of the case before the State Superintendent.  See Code, section 2820, and *Carpenter v. Ind. Dist.,* 95 Iowa, 303.  But the decision of both the County and the State Superintendent must be within their respective jurisdictions in order to be binding upon any one.  Primarily the location of a school site is within the exclusive jurisdiction of the school board.  Code, section 2773.  Appeal may be taken to the County Superintendent, and from him to the State Superintendent (Code, sections 2818, 2820), and in either case, such decision shall be made upon appeal " as is just and equitable."  Neither the County nor the State Superintendent exercises original jurisdiction.  That power is conferred upon the school board, and upon it alone.  Upon appeal the action of the board is reviewed, and either reversed or affirmed, or such action taken in the premises as the school board should have taken in the matter.  This, however, does not mean that either the County or the State Superintendent may independently and upon his own motion usurp the powers of the board, and make such an order as the board might have made.  No original action may be had by either official.  He acts as an appellate tribunal only.  This is fundamental.  *Doolittle v. Shelton,* 1 G. Greene, 271.  This decision does not, it is true, relate to the appellate powers of a Superintendent of Public Instruction, but the rule announced is applicable to all appellate procedure.  Other courts have applied it to the orders and decisions of school superintendents.  See *Knight v. Woods,* 129 Ind. Sup. 101 (28 N. E. 306); *Davis v. Humphrey,* 21 Ky. Law, 660 (52 S. W. 946).

We may assume, without deciding, that both the County and the State Superintendents had authority to determine as between two sites presented to the Board of Directors for selection; but neither had authority to establish a new site,

although part of it included one of the sites involved upon the appeal.   Nor may new conditions be imposed, which were not presented to and acted upon by the Board of Directors. This is not the exercise of appellate jurisdiction.   We think the order made by the County Superintendent, and approved by the State Superintendent upon appeal to him, was without authority, and was not binding upon the Board.   None of the cases cited and relied upon by the appellee run counter to the views herein expressed.

Again, it is conceded by all that after a decision by either the County or State Superintendent, the Board may relocate the site if there be a material change in the conditions.

2. Same: relocation of site.

The change in this case was not only in the law, whereby the school district might increase its bonded indebtedness (chapter 114, Acts 30th General Assembly), but also in the fact that an attempt was subsequently made to apply this law to the then conditions of the district.   While the change was made in the law before the final decision of the State Superintendent, he could not apply that law to the facts then before him.   It also required a change in the attitude of the electors.   This change occurred, and was shown, after the State Superintendent had made his decision, both in the elections which followed, and by the petition presented to the State Superintendent.   This change was recognized by the State Superintendent himself in his attitude toward the matter, as indicated by his correspondence with the Board.   The Board found and entered of record that there were such changes as justified a new location.   While not perhaps conclusive, this at least shifted the burden of proof to the plaintiff to show that there were no such changes as gave the Board the right to select a new location.   The Board attempted to carry out the decisions of the County and State officials, but could not do so.   It then selected a new location on account of changes in the conditions, and this it had a right to do. *Morgan v. Wilfley,* 70 Iowa, 338.

Moreover, in order that an action of mandamus will lie, it must appear that the board of directors had no authority or jurisdiction to make its final order.  Otherwise appeal is the only remedy. *Preston v. Board,* 124 Iowa, 355.  There is no such showing of want of authority here.

3. SAME:
   mandamus.

For the reasons pointed out, we think the trial court was in error in its judgment, and the decision must be reversed, and the cause remanded for one in harmony with this opinion.— *Reversed* and *remanded.*