JOHN CRAWFORD et al., Appellants, v. SCHOOL TOWNSHIP OF BEAVER et al., Appellees.

QUO. WARRANTO: Nature and Grounds—Illegality in Corporate 1   Organization—Schools and School Districts. An information in the nature of quo warranto is the *exclusive* remedy to test the legality of the organization of a municipal corporation. So held as to a public school corporation. (Sec. 4313, Code. 1897.)

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts— 2   Election—Notice—Sufficiency. The statutory requirement that

"not less" than ten days' notice of elections shall be given does
not prohibit a fifteen days' notice.  (Sec. 2746, Code, 1897.)

**SCHOOLS AND SCHOOL DISTRICTS:** School Buildings—Improper
3 Location of Sites—Remedy.  The *exclusive* remedy to test the
fitness and propriety of a schoolhouse site (no fraud being
properly pleaded) is by appeal from the decision of the board
of directors to the county superintendent, and from the latter's
decision to the state superintendent of public instruction.
(Secs. 2818, 2820, Code, 1897; Sec. 2773, Code Supp., 1913.)

**SCHOOLS AND SCHOOL DISTRICTS:** Meetings—Meetings Outside
4 District—Legality.  A school board may validly transact its or-
·dinary business at any ·point in any civil township in which
any of the territory of the district is situated.  So held where
the board met at a point outside the district, but within the
township which embraced part of the district, and selected a
schoolhouse site.  (Sec. 2757, Code Supp., 1913.)

*Appeal from Dallas District Court.—J. H. APPLEGATE,*
Judge.

MARCH 12, 1918.

The opinion states the case.—*Affirmed.*

*Charles W. Lyon,* for appellants.

*W. H. Winegar,* for appellees.  ·

WEAVER, J.—On April 5, 1916, a petition signed by
the requisite number of qualified voters, and approved by
the county superintendent of schools, was presented to the
board of directors of the School Township of Beaver, ask-
ing the formation of a consolidated independent school
district, to include territory (describing it) consisting of
not less than sixteen sections of land, according to gov-
ernment survey, and lying partly in the civil township of
Beaver and partly in the civil township of Spring Valley,
Dallas County, Iowa.  Acting upon this petition, the board
of directors ordered that an election be called, to be held
at the village of Gardiner, within the proposed consolidated

district, on April 22, 1916, and designated the place and the hours therefor, at which time and place there should be submitted to the voters of said territory the question, "Shall the proposed Consolidated Independent School District of Gardiner be established?" Notices of such election were ordered posted, as provided by law. On the following day, April 7, 1916, the secretary of the board of directors posted notice of such election at five public places within the territory of the proposed district. On April 22d, the election was held, two ballot boxes being provided: one for the use of the voters residing upon the plat of the village of Gardiner, and another for the voters of the remainder of the proposed district, outside of such plat. A canvass of the vote disclosed a majority, both of the voters of the village and of the outside territory, in favor of such consolidation. Upon the completion of said canvass, the board of directors of Beaver School Township called an election for the choice of members of the board of the consolidated district. This election was held May 20, 1916, and resulted in the selection of J. H. Wright, D. W. Gardiner, Henry Schnoor, J. W. Kever, and George Haskel, to constitute said new board. All of the persons named are impleaded as defendants in this action. Immediately, or soon, after such election, the persons named met in the city of Perry, which is within the civil township of Spring Valley, in which, as already noted, the consolidated district is, in part, situated, and then and there organized, by electing a president and secretary, who are also defendants herein. On June 17, 1917, the board of directors, as thus organized, met again in Perry, and by unanimous vote located the site for the construction of a schoolhouse for the consolidated district at Gardiner. From this order certain electors of the consolidated district, for themselves and for others entitled to appeal and desiring to join therein, appealed to the county superintendent of schools, who

affirmed the order made by the directors. From this decision, further appeal was taken to the state superintendent of public instruction, by whom the decision of the county superintendent was sustained. It should be also said that, at the meeting of the board of directors in Perry, on June 17th, a resolution was adopted to raise money by taxation for the purchase of a schoolhouse site and for the construction and equipment of a schoolhouse, and calling an election of the voters of the consolidated district, to pass upon the question of such taxation and issuing bonds for the aforesaid purposes. Such election was held July 29, 1916. and the proposition was carried by a majority vote. At the time of this last election, the appeal from the order locating the schoolhouse site had not been disposed of. After the affirmance of said order by the superintendent, this action was begun, October 17, 1916. The petition alleges the several matters hereinbefore recited (except the appeal taken from the location of the site for the schoolhouse), and avers that the consolidated district never acquired a valid and legal organization, because the notice ordered and posted for the first election was not made as required by law, in that the statute requires such notice to be posted "not less than ten days next preceding the election," while the notice in this instance was posted more than ten days, to wit, about fifteen days; also, because such consolidation has the effect to leave two subdistricts, each with a territory less than four government sections in extent; and third, because the meeting of the directors at which they elected a president and secretary and ordered the election upon the question of levying taxes and issuing bonds was held outside of the geographical boundaries of the consolidated district. It is further alleged that the schoolhouse site designated by the directors is not centrally located, and was selected without properly considering its position or the number and convenience of the pupils, as is required by the terms

of the statute.   Because of the matters thus pleaded, plain-
tiffs pray for a decree declaring the attempted creation and
organization of the consolidated district of Gardiner and
the location of a schoolhouse site at Gardiner void and of
no effect, and that defendants named as officers and direct-
ors of such district be enjoined from further exercise of
authority in such capacity, and from levying any
taxes or issuing any bonds for the use of such dis-
trict, and for general relief.   An amendment to the petition
was filed, pending the trial, alleging, in general terms, that
the action of the board in locating the schoolhouse site
at Gardiner was illegal, for the further reason that the board
of directors, in making such order, "acted fraudulently and
in bad faith," but stating no fact or facts constituting the
alleged fraud or bad faith.   Issue was joined upon the pe-
tition, and the trial court, after hearing the evidence, found
for the defendants, and dismissed the bill; and plaintiffs
appeal.

It will be observed that, while the petition is framed
in a single count, the cause of action stated has a double
aspect, in that it first denies the validity and legal organ-
ization of the consolidated district of Gardiner, and, as a
necessary consequence, challenges the validity of all the
official acts and proceedings of the officers and board of
directors of such district; and it also challenges the se-
lection of the schoolhouse site upon objections which, if
well taken, do not necessarily involve the district's legal
existence.   There is much in the record to justify the
thought, if not the conclusion, that the real bone of con-
tention in the case is the location of the schoolhouse, and
that, except for the conflict of opinion on this point, the
attack upon the validity of the proceedings for the creation
and organization of the district would not have been made.
We shall, however, consider both propositions as being
properly before us.

I.    There are at least two good and
sufficient reasons for sustaining the position·
taken by the trial court in refusing to de-
clare void the proceedings to create and or-
ganize the consolidated district of Gardiner.
In the first place, it is now the settled rule
in this state. that the regularity and validity of a public cor-
poration can be questioned only in a quo warranto proceed-
ing, and not in a suit to enjoin its operation. *Nelson v. Dis-
trict*, 181 Iowa 424; *Harvey v. Kirton*, 182
Iowa 973.    In the second place, the objec-
tion on which counsel relies with most ap-
parent confidence, that the posting of no-
tices for the first election fifteen days next
preceding the day named for said election is not a compli-
ance with the statute which required them to be posted
"not less than ten days next preceding" the appointed day,
is clearly without merit.    The provision for "not less"
· than ten days' notice so clearly implies that the posting
.for any reasonable period not less than ten days imme-
diately preceding the day named will be regarded as suffi-
cient, that it is difficult to conceive how any other mean-
ing can be read into the legislative language.    The evident
intent of the statute in this respect is to give the voters
reasonable opportunity to become advised of the time and·
place of the election, and of the purpose for which it is
called; and to that end, and to prevent undue haste, ten
days next preceding such election is fixed as the minimum
period.    No maximum period is fixed or suggested.    It
may be true that the date for an election may be post-
poned so far in the future as to defeat its statutory pur-
pose, and that, in such case, the courts would hold it equiv-
alent to no notice at all (*Consolidated Ind. School Dist. v.
Martin*, 170 Iowa 262) ; but it would be the extreme of un-
reason to say that the provision for notice of not less than

1. QUO WARRAN-
TO : nature
and grounds :
illegality in
corporate or-
ganization :
schools and
school dis-
tricts.

2. SCHOOLS AND
SCHOOL DIS-
TRICTS : con-
solidated dis-
tricts : elec-
tion : notice :
sufficiency.

ten days next preceding a given date is not satisfied by giving a notice fifteen days next preceding it. As well might it be said that the statute which provides that an original notice in an action brought for a given term of court must be served not less than ten days between the day of service and the first day of the term, is not complied with by a notice which leaves more than ten intervening days,—a construction of the statute for which we think no one will stand sponsor. Nothing said in the *Martin* case, supra, suggests any other conclusion.

Counsel for appellant also concedes, in argument, that this court has decided adversely to the proposition that the organization of a consolidated district is invalidated because it leaves one or more subdistricts with a territory less than four government sections in extent; and the point so made is to be considered abandoned.

It follows that, for the purposes of this case, the creation and organization of the district are to be treated as valid.

II. Referring to the order locating the

3. SCHOOLS AND SCHOOL DIS- TRICTS: school buildings: im- proper location of sites: remedy.

schoolhouse site, it cannot be doubted that the fixing of such location is committed by statute to the board of directors. True, the statute requires or directs the board to exercise such discretion with due regard to geographical position and the number and convenience of the pupils; but when the location is ordered, the courts must presume that the board did its duty in these respects. If it be complained that the discretion has not been wisely exercised, or that the board has ignored considerations of geographical position, or the number or convenience of the pupils, the remedy is not to be found in injunctive relief at the hands of the courts, but by appeal to the county superintendent, and thence to the state superintendent of public instruction, whose decision is final. Code Sections 2818 to

2820; *Newby v. Free,* 72 Iowa 379; *State v. Thomas,* 152 Iowa 500. In the case before us, it is made to appear that the remedy by appeal was sought, and the order made by the board was affirmed. This being shown, the court will not interfere, to nullify the decision so rendered. The board having acted within its jurisdiction, and in the exercise of a power expressly granted, its order is not void, and is, therefore, not subject to collateral attack in injunctive proceedings. It follows that appellant's allegation that the site of the schoolhouse is not centrally located, and was not selected with due regard to the number and convenience of the pupils to be accommodated, states no ground for equitable relief, and the testimony in support thereof cannot be considered in this action. The argument that the board has no discretion in the matter, because the statute provides that the board "shall take into consideration" the matters here referred to, is not sound. The statute does require the board to consider these things, but it does not attempt in any manner to control the conclusion at which the board shall arrive in any given case. It is the judgment of the board, in view of all the premises, which is to control, and not the judgment or opinion of the witnesses; and that judgment or conclusion may be reviewed in no other manner than by appeal, which the statute provides for that express purpose.

4. SCHOOLS AND SCHOOL DISTRICTS: meetings: meetings outside district: legality.

The only escape from this conclusion is to say that the order fixing the location, having been made in Perry, outside of the geographical boundaries of the consolidated district, is in no sense an official act, and is, therefore, without any legal force or effect whatever, and its enforcement may, for this reason, be enjoined. Does this effect follow the conceded fact that the board meeting at which the selection was made was held in Perry? The authorities cited by appellant in support of this proposi-

tion go no further than to hold that, where the statute has fixed the place at which the meeting of a board of officers must be held, then a meeting held elsewhere is without authority by law, and the proceedings had at such unauthorized place may be treated as void. We may, for the purposes of this case, go further, and assume it to be the law that, in the absence of statutory authority permitting it, boards of directors of school districts cannot hold a valid meeting for the transaction of their official business outside the geographical boundary of the districts which they respectively represent. But in the present case, we are not left without statutory direction. In our school statute, Section 2757, Code Supplement, 1913, speaking of the powers, duties, and meetings of the directors of school corporations, we find this provision:

"Such meetings shall be held at any place within the civil township in which the corporation is situated."

As is familiarly understood by the people of this state, a civil township may be organized into a school township made up wholly of subdistricts, or wholly of independent districts, or in part of subdistricts and in part of independent districts, or it may include part or all of one or more consolidated districts which are, in effect, enlarged independent districts. Subdistricts are not corporations, and have no governing board except that of the school township of which they are part; but independent districts and consolidated districts are corporations, each having its own board of directors. It follows that, when the statute above quoted speaks of school corporations "within a civil township," reference is had to the independent districts and consolidated districts the territory of which is located in such township; and when it provides that the directors of a school corporation may meet anywhere in the civil township in which the corporation is situated, it is not open to reasonable question that this privilege is intended for the

benefit of independent and consolidated districts. Indeed, there is no other public school corporation to which the description "within the civil township" can be made to apply. In avoidance of this obvious situation, counsel for appellant say that, even if this be true, the statute cannot apply in the present case, because the consolidated district includes territory in two civil townships; and, as the civil township in which the board met and made its order locating the schoolhouse site includes only a part of the consolidated district, the latter cannot be said to be situated "within" such township. The argument is ingenious, but not entirely convincing. The consolidated district may fairly be said to be within any civil township in which any part of its territory is situated; and this, we think, is none the less true because it may logically follow that, in the statutory sense, this particular consolidated district is, at one and the same time, in two different civil townships, in either of which the board may lawfully assemble and transact business. There is no good reason why the legislature should not extend such privilege to the board of directors, nor does the reasonable construction require us to find any legislative intent to limit the statute as contended by appellant. The civil township is the unit of organization, for most purposes of local government. This is especially true in rural communities. It is also true that, in a large proportion of rural townships, there are towns or villages or other central points affording places of meeting for the members of such boards more convenient than are to be found within the limited bounds of their respective districts; and, in enacting this statute, we may presume that the legislature had in view this fact, and sought thus to promote the convenience of a class of public servants who serve the community without salary or perquisites. The meetings of school boards for the transaction of ordinary business are not fixed by law for any particular dates or places; they are

not required to be advertised in advance; and their restriction to the civil township is reasonably sufficient to prevent clandestine misuse of their power and authority. The courts are, and ought to be, slow to interfere with the conduct of public business by public officers; and this is especially true of public business committed to the administration of officers or boards not learned in the law, and unaccustomed to the observance of strict, legal formalities. If they manifest good faith, and show substantial compliance with the law prescribing their duties, their acts should be sustained against the hostile attack grounded on technical defects and omissions occasioning no prejudice to public interests.

The case made by the appellants is without sufficient proof of facts entitling them to equitable relief, and the decree of the district court dismissing their bill is—*Affirmed*.

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.