G. W. MUNN et al., Appellants, v. INDEPENDENT SCHOOL DISTRICT OF JEFFERSON et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Selection of Schoolhouse
1  Site—Vote of Electors—Effect. A majority vote of school electors, cast in connection with a defeated bond proposition, in favor of retaining an old schoolhouse site, and personal pledges of divers directors to abide by such vote, do not deprive the directors of their statute-given power, on a *subsequent* voting of bonds, to select a new site and employ the proceeds of the bonds thereon.

**SCHOOLS AND SCHOOL DISTRICTS:** Selection of Schoolhouse
2, 3 Sites—Review by Court. Selections of schoolhouse sites are non-reviewable by the courts, so long as the directors act within their statute-given powers.

**APPEAL AND ERROR:** Review—Nonentertainable Assignment.
4  An affirmance of a ruling dissolving a temporary injunction becomes the law of the case, and precludes the consideration of an assignment of error based thereon, in an appeal from the final order denying a permanent injunction.

**INJUNCTION:** Futile Injunction. An injunction will be denied
5  when the very thing sought to be prevented is an accomplished fact. So held where it was sought to prevent the building of a schoolhouse on a named site, and the building had been already built thereon.

**CONSTITUTIONAL LAW:** Classification and Due Process—Varia-
6  tion in Condemnation of Property. The assembly may validly provide different courses of procedure for the condemnation of private property (1) by school districts and (2) by railways. So held where the difference was in the obligation to take and pay for the land, and in the assessment of costs and attorney fees.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

MARCH 16, 1920.

THE Independent School District of Jefferson undertook the erection of a new high school building, and bonds were voted and issued for that purpose. A controversy arose over the location of the site for such building, and in that controversy this litigation had its origin. One faction of the citizens of the district favored the site of the old building, while others favored the selection of a new site. At the time this suit was begun, in May, 1917, the board of directors had decided in favor of a new location, and had begun proceedings to condemn for that purpose certain grounds known in the record as Block 34. Thereupon, this action was begun by several residents and taxpayers to enjoin the condemnation proceedings, and for temporary and permanent injunction restraining the district and its board of directors from locating the new building at any place other than the site of the old one, or ground immediately adjoining. A temporary injunction was issued, as prayed, but, within a few days thereafter, the court vacated and dissolved the writ, on motion of the defendants. From such order plaintiffs appealed to this court, and applied for an order staying proceedings and continuing the injunction in force, pending the disposition of said appeal. The application was denied, and the order of the district court dissolving the injunction was affirmed. The issues joined between the parties were thereafter tried to the district court, which, after a full hearing upon the merits of the case, found for the defendants, denied the prayer for an injunction, and dismissed the petition. From that decree, appeal has been taken by four of the ten plaintiffs, and it is this appeal which now calls for our consideration. The facts,

so far as they may be necessary to a decision, are stated in the opinion.—*Affirmed.*

*Senneff, Bliss & Witwer, J. A. Henderson,* and *T. A. Mugan,* for appellants.

*E. G. Graham, Church & McCulley,* and *Howard & Sayers,* for appellees.

WEAVER, C. J.—It is quite impossible to state this case with anything like the fullness of detail which marks its presentation by counsel, and keep our opinion within its

1. SCHOOLS AND SCHOOL DIS- TRICTS : selec- tion of school- house site : vote of electors : effect.

reasonable limit of space. The abstracts contain about 450 printed pages, and the arguments of counsel are equally volumi- nous. Appellants' "statement of facts" con- tains 366 distinct paragraphs. The assign-

ment of error upon rulings of the trial court are 27 in num- ber, and to these are added other alleged errors committed by this court in disposing of plaintiffs' appeal from the dissolution of the temporary injunction. All this is fol- lowed by appellees' motion to dismiss the present appeal, which fills 28 closely filled typewritten pages.

Such a record compels us to select for specific mention and discussion only those facts and legal propositions which appear to us of controlling importance and necessary to our understanding of the essential issues presented.

I. It is proper at the outset to expand the prelimi- nary statement of facts by adding thereto the following, concerning most of which there is no dispute:

(1) At an election held on March 29, 1915, there were submitted to the voters of the Independent District of Jeff erson two propositions, as follows:

(a) The first question was upon issuance of bonds of the district in the sum of $60,000, "for the purpose of con- structing and equipping a new schoolhouse."

(b) The ballot upon the second question was in the following form:

"☐ I favor the present site; meaning the present school grounds or ground adjacent thereto."

"☐ I favor some other site away from the present school site to be selected by the board."

This election resulted in the defeat of the bonding proposition, while a very considerable majority of the voters indicated their preference for the old site.

(2) Thereafter, on May 26, 1915, a second election was held, on the question of issuing bonds to the amount of $70,000, "for the purpose of constructing and equipping a new schoolhouse," and the proposition was carried by a substantial majority. No vote was taken at this election upon the choice of location for the new building.

(3) Owing to some irregularity in the last-mentioned election, the bonds authorized could not be marketed, and a third election was held on May 29, 1916, at which a proposition for a bond issue of $80,000 was submitted, and carried by a large majority. There was no attempt at this election to vote upon a choice of site for the building. It appears, however, that the subject of the location of the proposed building was a matter of much discussion, pending the call for the second election, and that four of the five members of the board signed a statement or circular for public distribution, to the effect that they felt bound by the vote at the first election, and that, if the bond issue was carried, said directors would locate the building on the site so designated. In the campaign preceding the third election, the subject of locating the site of the proposed building was, perhaps, less prominent, but was still the subject of public discussion; and, for the purposes of the appeal, it may be conceded that the directors, or some of them, repeated or renewed their expression of purpose to adhere to the choice of the old site.

It is not disputed that, at all times, all parties to the controversy conceded that, if the old site was to be retained, additional grounds bordering thereon were essential to its use for that purpose.

(4) When the bond issue was finally settled, the directors, in apparent good faith, sought to obtain title to the additional grounds deemed necessary to make the old site suitable for the location of the new building, and to that end contracted for the purchase of one tract, and began proceedings to condemn another. The situation then became complicated by litigation involving the right of the district to condemn the property last mentioned, and by the act of the owner of another desired tract in refusing to carry out his contract to convey it, thus necessitating a suit to enforce his specific performance. About this time, new public interest in the question was excited by an offer by Captain Head, a citizen of Jefferson, to convey to the Independent District a site of 5 acres of land for the schoolhouse, and to dedicate an adjacent tract of 10 acres as a park, without cost or other consideration, except the location of the schoolhouse on the 5-acre tract. This discussion materialized in a petition to the directors, signed by over 700 citizens and voters of the Independent District, constituting a decided majority of the voters, asking the board to consider the question of abandoning the old site and accepting the offer of Captain Head. A largely attended public meeting was also held, to induce the board to change the location from the old site. The board having declined to so act, and having indicated its purpose to retain the old site, certain citizens and taxpayers of the district appealed from its decision regarding the location of the new building, to the county superintendent of schools.

Trial of said appeal before the superintendent was begun; but, before its conclusion, the board of directors and the appellants in that proceeding entered into a written

stipulation, reciting that, whereas the state superintendent of public instruction would ultimately be required to pass upon the controversy, and whereas all the parties desired that a decision be reached as quickly as possible, without unnecessary delay or expense, it was, therefore, stipulated and agreed that the state superintendent, Hon. A. M. Deyoe, act as sole arbitrator in the premises; that he visit Jefferson, examine all the sites proposed, and make full determination of the site, and recommend the same to the board of directors and to the county superintendent of schools, as he should deem best, under Code Section 2773.

The stipulation further provided that, when such recommendation should be made, a judgment or finding conforming thereto should be entered by the county superintendent, the same to be final as against all parties to said appeal.

Acting upon this stipulation, the state superintendent did visit Jefferson, and, after an examination of the situation, made a written finding, recommending that the new building be located upon a tract of land described as Block 34 of the original town of Jefferson, and stating the reasons leading him to such choice. Pursuant to the stipulation aforesaid, the county superintendent adopted said choice of location as his own, and designated said Block 34 as the site upon which the building should be constructed. This order was entered on February 27, 1917.

(5) Following said decision, the board of directors adopted Block 34 as the site of the building, and proceeded to acquire title thereto. A part of said block was thereupon acquired by the district by purchase, and the remainder was already in course of condemnation, when this action was begun, May 14, 1917, to enjoin such proceedings, and to prevent the use of the moneys of the district for the construction of the schoolhouse at any other location than what is known as the old site.

The temporary injunction obtained by the plaintiffs

having been dissolved, the defendant district, by its board of directors, having acquired and paid for Block 34, proceeded with the construction of the new building thereon; and, at the time of the trial below, about 25 per cent of the work had been done; and we may assume that it has since been fully completed.

(6) After the occurrence of the matters and things complained of by the plaintiffs' petition, and after the selection of Block 34 to be the site of the new building, the matter of increasing the appropriations for the expense thereof was twice submitted to the electors of said district, and the issuance of additional bonds for that purpose, to the aggregate amount of $95,000, was approved by a majority vote.

II. In addition to matters above stated, there is a large volume of evidence which is of little probative value, except, perhaps, as side lights upon the origin and development of the controversy. Eliminating from our consideration all matters which are wholly foreign or merely collateral to the central issue in the case, the result turns upon the simple question of the validity of the act of the board of directors in locating the new schoolhouse on Block 34: not whether such action was irregular or erroneous, but was it without authority and void? It is not within the province of the court to inquire into the wisdom of the choice so made, but it may inquire into the power and authority by which it was made.

That the board of directors is clothed with general authority to fix the sites of the schoolhouses within their respective districts is not open to question. It is so provided by the express terms of the statute, Code Section 2773. The decision of the board upon the question thus commit-

ted to its discretion by the statute is re-
viewable only upon appeal to the county su-
perintendent of schools, and thence to the
state superintendent of public instruction;
and, in the absence of some showing that
the board has clearly exceeded its statutory
jurisdiction and authority, the courts will not attempt to
control its action, by injunction or otherwise. *James v.
Gettinger,* 123 Iowa 199; *Doubet v. Board of Directors,* 135
Iowa 95; *Kinney v. Howard,* 133 Iowa 94; *Vance v. Dis-
trict Township,* 23 Iowa 408; *Crawford v. School Twp.,* 182
Iowa 1324. The determination of the board of directors in
this case to place the new building upon Block 34 was not
appealed from by the plaintiffs, or by any of them, or by
any other person; and, for the reasons above stated, this
action to enjoin the purchase of the site or use of the bond
fund cannot be maintained by the court, unless there be
alleged and shown some valid reason or ground for declar-
ing the act of the board wholly unauthorized.

2. SCHOOLS AND SCHOOL DIS-TRICTS: selection of school-house sites: review by court.

Stated as briefly as practicable, the position of the ap-
pellants is that the bonds for building the schoolhouse were
voted by the district upon the express and implied pledge
or promise of the directors to make use of the old site, and
that the board thereby became legally and equitably bound
to place the building there, and not elsewhere. Referring
to this phase of the case, the trial court, in dismissing the
plaintiffs' petition, stated its finding: that, while the ques-
tion of voting the bonds was still before the people of the
district, the members of the board did make public promise
or statement of their purpose to build upon the old site, and
that such was, at that time, the wish or preference of a ma-
jority of the voters. The court further stated its opinion
that good faith upon part of the directors required them to
make an honest and reasonable effort to locate the building
on the old site, or on lands adjacent thereto, but that such

obligation did not deprive them of the power and discretion given them by law to select or adopt another site, if, upon making such honest and reasonable effort, the performance of their pledge was found-impossible or impracticable. Proceeding upon such theory, the court stated its conclusion as follows:

"I believe, from the evidence in this case, that the defendant board did make such effort to carry out these pledges which had been made to the voters, and that its failure to secure such a location is due to no fault of the board, which found itself in a position where such selection could not be made and adhered to, with any reasonable prospect of success. The action of the board in selecting the site here complained of was not taken in bad faith, but was prompted by a desire to provide the school building of which the school district was greatly in need, under circumstances which seemed to make any other solution of the problem impossible."

It appears to have been taken for granted from the outset, by all concerned, that the old site, as it then existed, was inadequate for the purposes of a new and enlarged building, and that, if it were utilized for that purpose, other and additional adjacent ground would have to be procured. The record fairly shows that, when the bond proposition was finally adopted by the district, the board did proceed with an apparently diligent and earnest effort to secure the additional grounds so needed, and became involved in litigation which promised indefinite delay in securing the necessary title. In the presence of this complication, and the offer of other alleged desirable sites, it is further quite evident that public sentiment, an ever uncertain and fickle element in human affairs, veered from the choice of the old site, and found expression in a petition to the board, signed by more than three fourths of the voters of the district, asking that the choice of another site be considered. Still feel-

ing bound by their pledges, the directors adhered to the old site until their decision was appealed from, and the stipulation already mentioned, referring the dispute to the state superintendent, was entered into, with the result hereinbefore mentioned.

The district was in sore need of a schoolhouse. The old building had been condemned, as unfit for use. It was unwise, if not unlawful, to expend the money of the district in constructing a building upon grounds to which title had not yet been obtained, and there was no immediate or certain prospect of obtaining it. The board was charged with the duty, as well as the power, to provide a site for the building, a power of which it could not divest itself, and a duty to the district which it could not properly refuse to perform. Having encountered an obstacle to the use of the old site which could not be promptly and effectively removed, we agree with the trial court that the directors cannot be charged with having exceeded their statutory power, in locating the building upon other convenient grounds. That, in so doing, they succeeded in finding the best way out of the factional quarrel which had disturbed the harmony of the district, appears to be demonstrated by the cheerful acquiescence of their constituents generally in the construction of the building upon Block 34; a fact which is made apparent by the circumstance already mentioned, that, in two successive elections held since the choice of that site, the voters have approved the issue of additional bonds to the amount of $95,000, to carry the work to completion.

In affirming the conclusion of the trial court, we do not wish to be understood as deciding that the vote cast for the choice of site at the first election, held in 1915, at which the proposed bond issue was defeated, was of any legal force or binding effect to control the action of the directors in the matter of selecting a site after the third election in 1916, at

which the bond issue of $80,000 was carried, without any accompanying vote upon the question of site. The original vote in 1915 and subsequent statements and pledges by the individual directors may very properly have been regarded by them as imposing a moral obligation to do what was reasonably possible to retain the old site; but we are not prepared to hold that they were thereby shorn of their authority, when acting in their official capacity, to select a suitable site for the building, according to their best judgment, honestly exercised in the public interest.

The case of *Rodgers v. Independent School Dist.*, 100 Iowa 317, on which appellants largely rely, is not controlling here. In that case, the board of directors submitted to the people the question of a proposed bond issue. Controversy had arisen between advocates of building on the old site, and others desiring a change; and the bond issue had been defeated. Another election was then called, in the notice of which the people were advised that the question would be for the issue of bonds "to build a schoolhouse on old site;" and, at the election, the ballot upon its face expressly declared that the question to be decided was on the "issuing of bonds for $12,500, to build schoolhouse on old site," and this proposition was carried. In view of such showing, it was held by this court that the proceeds of the bonds could not lawfully be diverted to the building of a schoolhouse on another site—a decision the correctness of which may here be conceded; but the case before us presents a very different situation. The only vote taken by the electors of Jefferson on the subject of a site for the proposed schoolhouse was at the one held in March, 1915, when the building project was defeated. At the later elections, the question of site was not voted upon, nor was the use of the funds to be derived from the bond issue in any manner limited to the old site, in the call or notice or form of ballot for such elections. There were no conditions attached to

the bond issue, save such as are to be implied from the purpose for which they are authorized by statute. Indeed, it is to be said that, at the election which authorized the bond issue of $80,000, the necessity of expending money for either a new site or an enlarged old site was expressly recognized in the form of the question prepared and submitted for the use of the voters, which reads as follows:

"Shall the Independent School District of Jefferson, in the county of Greene, state of Iowa, issue bonds not to exceed eighty thousand dollars ($80,000.00) for the purpose of constructing and equipping a new schoolhouse *and procuring a site therefor?*"

This is not only consistent with the unrestricted exercise by the board of directors of all their statutory authority and discretion in the matter of selecting a site for the schoolhouse, but is quite inconsistent with the assertion that it had, in some unofficial manner, abdicated its authority.

III.   Counsel for appellants argue at considerable length that the act of the state superintendent of public instruction, with reference to the selection of Block 34 as a site for the schoolhouse, was without authority of law.

**3. SCHOOLS AND SCHOOL DISTRICTS: selection of schoolhouse sites: review by court.**  Under the record, we think it quite immaterial whether the superintendent had any controlling authority in the matter. The material inquiry, as already said, is whether the board of directors exceeded its jurisdiction and authority in selecting the site, or in adopting the site recommended by the superintendent. We think it unnecessary to inquire or decide whether the action of the superintendent was authorized. If his action in the premises was valid, the board did not exceed its power in acting upon it. If his action was invalid, the board's selection of the site was still within the scope of its own discretion and authority. Its decision, as we have seen, not being in excess of the power conferred

upon it, and not having been appealed from, cannot be controlled by injunction.

IV.  Many assignments of error are directed against the ruling of the trial court, dissolving the temporary injunction.  As the plaintiffs took their exception to that order, and appealed therefrom, with the result that such ruling was affirmed, the question sought to be raised is no longer an open one, and the decision so made is, to that extent, the law of the case.  Indeed, it is quite difficult to understand what material question said adjudication leaves in the case.  The substance of the relief demanded is an injunction against the acquirement and use of Block 34 as the site of the school-house, and against the appropriation of the bond fund of the district for the building of a schoolhouse elsewhere than on the old site.  To that end, plaintiffs presumably made their best possible showing of alleged facts in their petition and application for a temporary injunction.  In dissolving such injunction, the trial court and this court necessarily held that the alleged facts, even if established by proof, were insufficient to justify equitable interference, and, by vacating the injunctions, left the district and its directors at liberty to proceed with the acquirement of the title to the new site and the construction of the building thereon, and to appropriate thereto the proceeds of the bonds; all of which, the evidence tends to show, has, in fact, been done.  The essential thing against which the plaintiffs sought to use the injunctive power of the court is now an accomplished fact.  The money has been expended, the schoolhouse has been constructed, and, we may presume, is now in actual occupancy and use by the district for school purposes.  To grant an injunction at this time would be an idle ceremony,

4. APPEAL AND ERROR : review : non-entertainable assignment.

5. INJUNCTION : futile injunction.

as the decree and writ would have nothing upon which to operate.

V. One of the plaintiffs, Anna Mugan, claims to have owned an interest in one of the lots in Block 34 which the district undertook to condemn for the new site, and she alleges that the proceedings were void, be-

6. CONSTITUTION-
AL LAW: clas-
sification and
due process:
variation in
condemnation
of property.

cause the statute under which the condemnation was had is unconstitutional. The statute referred to was enacted by the thirty-seventh general assembly, as a substitute for Section 2814, Code Supplement, 1913, and is said to be void because it violates the constitutional guaranty of due process of law, in that, while providing for an appeal to the district court from the award of damages, it imposes no obligation upon the district to take and pay for the land, and does not provide for assessing costs and attorneys' fees against the district, as is done under the statute providing for the exercise of the right of eminent domain for works of internal improvement. The argument of counsel in support of this position is, in effect, that the distinction made by the statute between proceedings for condemnation for works of internal improvement generally, and proceedings for condemnation of schoolhouse sites, is an unreasonable and arbitrary discrimination, which contravenes the constitutional rule.

We are not persuaded that the distinction is either unnatural or arbitrary. To constitute a violation of the constitutional provisions in this respect, the unreasonable character of the discrimination must clearly appear. It is n' enough that it may seem to the court unwise or unnecessary, but its arbitrary character must admit of no reasonable doubt. *Hunter v. Colfax Cons. Coal Co.,* 175 Iowa 245, 288; *McLean v. Arkansas,* 211 U. S. 539, 547; *State v. McGuire,* 183 Iowa 927.

There is a manifest distinction between the exercise

of the right of eminent domain by a school district for
school purposes, solely in the public interest, and the exer-
cise of the same power by a railway company for its right
of way, or by a mill owner, to acquire the right to flood
adjacent land by the erection of a mill dam, to promote an
interest which is only quasi public; and if the legislature,
recognizing such distinctions, provides distinctive methods
of condemnation, there is no infraction of the property own-
er's constitutional rights.  So far as appears, the plaintiff
Mugan was duly notified of the condemnation proceedings,
and, if there was any error or irregularity therein, she had
her remedy by appeal.

It is argued that the statute here in question was enact-
ed by the legislature at the instance or by the management
of counsel for appellees, to facilitate the purpose of the dis-
trict or of its board of directors in the selection of the new
site for the school building.  This is a question which in no
manner affects the merits of the case.  The enactment of the
statute was clearly within the power of the general assem-
bly, and the motives of the legislators and the reasons or
arguments leading them to such action are not a matter in-
to which we can properly inquire.

Further discussion of the case is unnecessary.  For the
reasons hereinbefore stated, we are satisfied that the board
of directors of the defendant district did not exceed its
jurisdiction and authority in fixing the site of the new
schoolhouse, nor in appropriating the proceeds of the bond
issue for the erection of the building on the site so fixed.
The equities are with the appellees, and the decree of the
district court dismissing the bill is—*Affirmed.*

EVANS, GAYNOR, PRESTON, and SALINGER, JJ., concur.