WILLIAM SPEIGHT *et al.*

*v.*

THE PEOPLE *ex rel.* the County Collector.

1. PRACTICE IN SUPREME COURT—*opinions at length upon questions already decided.* It is not the duty of this court, when it has reached a conclusion with which it is satisfied, upon any given question affecting a class of cases, to answer at length, and expose what it may deem a fallacy in every subsequent argument in which counsel may imagine they have successfully demonstrated the inaccuracy of the conclusion which the court has announced.*

2. PRACTICE—*objection to a particular tax—when it should be made specifically in the court below.* For the purpose of review in this court, where taxes for several distinct purposes are involved in objections made to the rendering of judgment for delinquent taxes, if it is desired to question the validity of any particular tax, as, a tax for school purposes, that particular tax must be specifically objected to in the court below. A mere general objection to all the taxes will not avail.

---

*Note by the Reporter: A similar question arose in the Supreme Court of California, in 1859, in the case of *Houston* v. *Williams et al.* 13 California Reports, 24. Mr. JUSTICE FIELD delivered the opinion of the court, TERRY, Chief Justice, concurring:

At the present term, the judgment in this case was reversed, without any opinion being given setting forth the reasons for the reversal. The appellant now moves the court to file an opinion, and cites section 69 of the statute of May 15, 1854, amending the Practice act, which provides, that "all decisions given upon an appeal, in any appellate court of this State, shall be given in writing, with the reason therefor, and filed with the clerk of the court," except in cases tried in the county court, on appeal from a justice's court. The provisions of the statute had not been overlooked when the decision was rendered. It is but one of many provisions embodied in different statutes, by which control over the judiciary department of the government has been attempted by legislation. To accede to it any obligatory force, would be to sanction a most palpable encroachment upon the independence of this department. If the power of the legislature to prescribe the mode and manner in which the judiciary shall discharge their official duties be once recognized, there will be no limit to the dependence of the latter. If the legislature can require the reasons of our decisions to be stated in writing, it can forbid their statement in writing, and enforce their oral announcement, or prescribe the paper upon which they shall be written, and the ink which shall be used; and yet no sane man will justify any such absurd pretension; but where is the limit to this power, if its exercise, in any particular, be admitted?

The truth is, no such power can exist in the legislative department, or be sanctioned by any court which has the least respect for its own dignity and independence. In its own sphere of duties, this court can not be trammeled by any legislative restrictions. Its constitutional duty is discharged by the rendition of decisions.

The legislature can no more require this court to state the reasons of its

3. School taxes—*by whom to be levied—constitutional limitation.* There is no limit in the constitution to the power of the legislature in providing for the formation of school districts, nor in prescribing who shall or shall not be empowered with the levy, collection and custody of school taxes. These are wholly within the discretion of the legislature.

4. So, although the General Assembly may require the boundary lines of cities to be adopted as lines for the formation of school districts, and that city officers shall perform the duties of school officers, such officers will, in the exercise of their different functions, represent the corporations to which those functions respectively appertain—those belonging to the city, under its charter, in the one case, and those relating to schools, under the school law, in the other.

5. Same—*what regarded as school laws.* As affecting the power of a city council to levy taxes for free school purposes, under a charter which vests in the city officers the control over such schools within the territorial limits of the city, all laws, whether in city charters or elsewhere, upon that subject, may be regarded simply as school laws, and as a part of the law designed to execute the mandate of the constitution in respect to a free school system.

6. Same—*as to a local or special law, in respect to the levying of taxes for school purposes.* The constitutional prohibition that the General Assembly shall not pass any local or special law providing for the *management* of common schools, does not operate to prevent the levying of taxes for school purposes, and the custody of the funds when the taxes are collected, by different officers in a city than those discharging these duties in other localities. There is a distinction, in this regard, between the *establishing* of a school and providing for its support, and its management or conduct when established and supported.

---

decisions, than this court can require, for the validity of the statutes, that the legislature shall accompany them with the reasons for their enactment. The principles of law settled are to be extracted from the records of the cases in which the decisions are rendered. The reports are full of adjudged cases in which opinions were never delivered. The facts are stated by the Reporter, with the points arising thereon, and are followed by the judgments rendered; and yet no one ever doubted that the courts, in the instances mentioned, were discharging their entire constitutional obligations.　　＊　　＊　　＊

The opinions of the judges, setting forth their reasons for their judgments, are, of course, of great importance in the information they impart as to the principles of law which govern the court, and should guide litigants; and right-minded judges, in important cases,—when the pressure of other business will permit,—will give such opinions. It is not every case, however, which will justify the expenditure of time necessary to write an opinion. Many cases involve no new principles, and are appealed only for delay. It can serve no purpose of public good to repeat elementary principles of law which have never been questioned for centuries.

The court must, therefore, exercise its own discretion as to the necessity of giving an opinion upon pronouncing judgment, and if one is given, whether it shall be orally or in writing. In the exercise of that discretion, the authority of the court is absolute. The legislative department is incompetent to touch it.

*The motion was denied.*

APPEAL from the County Court of Cook county; the Hon. MARTIN R. M. WALLACE, Judge, presiding.

Application was made, in the court below, by the county collector of Cook county, for judgment against certain real estate, owned by different persons, for unpaid taxes for the year 1875 and prior years. Various objections were interposed by the owners, which were overruled by the court, and judgment was entered. Many of the owners appealed to this court, and the several records presenting the same questions are considered in one opinion.

Mr. EDWARD ROBY, for the appellants, among other questions presented, objected that the levy of the tax for school purposes by the city of Chicago was unauthorized by law, and void. The counsel insisted that the control of schools and levy of taxes therefor was not vested in the city council, but in the board of school directors, or other special corporations created by the school laws solely to take charge of the subject of education within their jurisdiction. The power, in this regard, given in the city charter of 1863, ceased to exist upon the city of Chicago becoming incorporated under the general law, in April, 1875, and thereafter the entire control of schools and taxation for school purposes was vested in a class of officers separate from the municipal government, as provided in the school law.

Mr. JOHN BORDEN, and Mr. JOHN P. WILSON, also, for the appellants.

Mr. FRANCIS ADAMS, Mr. JOHN M. ROUNTREE, Mr. WILLIAM H. HOLDEN, and Messrs. KRETZINGER & VEEDER, for the appellees.

Mr. CONSIDER H. WILLETT, for the Village of Hyde Park.

Per CURIAM: The questions raised upon these records have been passed upon in *Law* v. *The People, ante,* p. 385, *Martin* v. *The People, ante,* p. 524, and other cases decided at the pres-

ent term; and we deem it unnecessary to enter upon any additional discussion.

The judgment for the city taxes, and taxes to entertain visitors, held invalid in *Law* v. *The People, supra,* must be reversed, and as to the other taxes the judgment must be affirmed.

*Judgment affirmed in part and in part reversed.*

Subsequently, a petition for a rehearing was filed, on behalf of the appellants.

Mr. Edward Roby, for the petitioners, cited:

Rev. Stat. 329, sec. 16. "In the decision of cases submitted to the Supreme Court, the opinions of the justices shall be delivered in writing, and filed with the other papers. Such opinions shall also be spread at large upon the records of the court."

It is implied from this section, that the court is required to try, consider fully, and by judicial ascertainment of the law to decide all cases submitted to it, and the opinion of each justice, either jointly with the others or separate, upon each issue submitted, and necessary to a decision of the case, shall be stated upon the records of the court. The law makers have deemed this necessary to the security of justice.

Const., art. 2, sec. 19. "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation. He ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay."

Beneath these sections each judge has subscribed this oath: "That I will support the constitution of the United States and the constitution of the State of Illinois, and that I will faithfully discharge the duties of the office of judge of the Supreme Court of the State of Illinois, according to the best of my ability." (Rev. Stat. 328, sec. 6.)

Only on these conditions, voluntarily assumed by oath,

have the men who administer been let into the office of judges; the rights of suitors and the duties of judges are measured by the same law. Under that fundamental law these cases were presented, and the issues were made up, on objections urged against seven several kinds of taxes, and against the whole assessment, upon each of which judicial decision must be made, and definite opinions entertained by every judge sitting in the case, capable of being expressed in writing, before a lawful judgment can be rendered against the appellants, affirming the judgment of the court below.

Per CURIAM: We are unanimously of opinion that a re-hearing in the present case should be denied.

Our views upon the principal questions have been elsewhere expressed, and we do not deem it necessary to repeat them here. If we have been so unfortunate, in the opinions filed, as to not make ourselves clearly understood, or to use satisfactory arguments in vindication of the conclusions reached, we have no reason to suppose that we would be more fortunate if we should repeat them here.

Without great injustice to other interests, it is impossible that our whole-time shall be given to a single class of questions, and we have not, therefore, deemed it our duty, when we have reached a conclusion with which we are satisfied, upon any given question affecting a class of cases, to answer, at length, and expose what we deem a fallacy in every subsequent argument in which counsel may imagine they have successfully demonstrated the inaccuracy of our conclusions.

We omitted in the former opinion to say anything upon the validity of the school tax, because, from the abstract furnished by counsel, we were unable to discover that question had been raised in the court below.

The only objection under which it can be claimed to have been included, was the general one, embracing the validity of all taxes. This we did not think was specific enough. We thought it due to the court below, that its attention should

have been called to this particular tax. But, waiving this, we have considered the question in another case, where the opinion has not yet been filed, as well as in the present case since reading the petition for rehearing, and we are of opinion the objection is untenable.

The const., art. 8, sec. 1, directs that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all children in this State may receive a good common school education." There is no limitation in that or any other article as to the agencies the State shall adopt in providing this system. There is, it is true, a limitation in art. 9, sec. 12, as to the amount of indebtedness a school district may contract; and in several other clauses may be found references to school districts, likewise recognizing them as subdivisions of territory for school purposes, but there is no attempt to limit the legislature in providing for the formation of school districts, nor in prescribing who shall or shall not be empowered with the levy, collection and custody of school taxes. The General Assembly, in accordance with a well settled canon of construction of legislative powers, may, therefore, act, in these respects, at its discretion, and prescribe such mode for the formation of school districts, and designate such persons for the levying, collecting and having the custody of school taxes, as it, alone, shall consider most conducive to the public interests.

In this view, we think the question of whether the sections of the old city charter, relating to schools, are to be regarded as repealed, by virtue of the adoption by the city of the general law, or as still existing, may be waived, and that all laws, whether in city charters or elsewhere, designed to affect free schools, may be regarded simply as school laws—as a part of the law intended to carry out the mandate of art. 8, sec. 1, of the constitution. And although they may require the boundary lines of cities to be adopted as lines for the formation of school districts, and that city officers shall perform the duties of school officers, yet this is for convenience only, and the districts thus to be formed, and the officers thus required to

perform duties, are to be regarded simply as agencies selected by the State to provide a system of free schools. Although the limits and officers of the two corporations (that for strictly city purposes and that for the purpose of providing free schools) are the same, their purposes and objects are different, and they are, in fact, separate and distinct corporations. The one has its existence and is limited in the powers it may exercise by its charter, proper; the other by the school law.

But sec. 22, art. 4, of the constitution, prohibits the General Assembly from passing any local or special law providing for the management of common schools, and it is thought this must prevent the levying of taxes for school purposes, and the custody of the funds when the taxes are collected, by different officers in the city than those discharging these duties in other localities.

It must be noticed that the language of this clause is much less comprehensive than that of art. 8, sec. 1. There, a *system* of free schools, not merely the *management* of free schools, is required to be provided; and had it been intended no local or special law should be enacted for that purpose, it is most natural and probable that it would have been so said. If, however, we shall assume that was not the proper place for a restrictive clause, then why not say in art. 4, sec. 22: "the General Assembly shall pass no local or special law in relation to common schools," if this was intended? This could have left no doubt, and is the plainest and most usual way of expressing such an idea.

We must assume that the word "management" was not unadvisedly or accidentally used, and that it relates to the conduct of the school in imparting instruction.

To establish a school and provide the necessary funds for its support, is one thing; its management or conduct, when established and supported, another and quite different thing.

If we are not in error in this view, the levy of taxes for the support of schools, as the levy was here made, is not within the prohibition of the constitution.

*Rehearing denied.*