(No. 20584.—

THE PEOPLE *ex rel.* The Board of Education of Deerfield-Shields Township High School District No. 113, Appellee, *vs.* FRANK W. READ *et al.* Appellants.

*Opinion filed April 23, 1931—Rehearing denied June 4, 1931.*

ISHAM, LINCOLN & BEALE, (CYRUS H. ADAMS, and CAL-VIN D. TROWBRIDGE, of counsel,) for appellants.

A. V. SMITH, State's Attorney, LOCKE, BAKER & SNDYER, and CARNAHAN & SLUSSER, (RICHARD F. LOCKE, and THOMAS H. SLUSSER, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

This is an appeal from a judgment of ouster and costs entered by the circuit court of Lake county upon an information in the nature of *quo warranto* brought by appellee against appellants attacking their right to act as members of the board of education of Community High School District No. 127, Lake county, Illinois. The sole ground of attack is the contention of the appellee that the act of the General Assembly approved June 17, 1929, under which Community High School District No. 127 was organized, (Smith's Stat. 1929, chap. 122, par. 99a, p. 2622,) entitled, "An act to add section 91a to 'An act to establish and maintain a system of free schools,' approved June 12, 1909, as amended," is unconstitutional. To the information filed, by leave of court the appellants filed a plea setting forth in detail the organization of the school district and their election as a board of education. To this plea the appellee filed a demurrer attacking the constitutionality of the act in question. The trial court sustained the demurrer, and when the appellants elected to stand by their plea the judgment above mentioned was entered against them.

The petition filed in this cause set forth that the appellee is a township high school district in Lake county organized and existing under the laws of this State; that on June 17, 1929, the General Assembly passed an act adding section 91a to the School law; that thereafter the county superintendent of schools of Lake county, claiming to act under the provisions of section 91a, entered an order detaching certain territory from Deerfield-Shields Township High School District No. 113 and creating a new community high school district comprising the territory so detached, to be known as Community High School District No. 127; that section 91a is unconstitutional and void, and that therefore the appellants had no lawful right to the offices which they claimed to hold and for the same reason district 127 had no lawful existence. An order was entered by the court granting leave to file the information, and thereupon the information in the nature of *quo warranto* was filed attacking the title of the appellants to the office of high school trustees, alleging the unconstitutionality of section 91a. The appellants filed their appearance as respondents to the petition, with their plea of justification. The plea sets forth that district 113 is a duly organized township high school district and prior to the creation of district 127 comprised certain described territory, including within its boundaries the incorporated city of Highland Park, of more than 10,000 inhabitants, and the incorporated city of Lake Forest, of more than 5000 inhabitants; that on April 1, 1930, a petition was filed with the county superintendent of schools of Lake county, signed by more than 2000 legal voters, constituting more than two-thirds of the legal voters in the territory described in the petition, asking that such territory be detached from district 113 and created into a new community high school district in accordance with the provisions of section 91a. The plea then sets forth in detail the procedure followed in forming the new district and manner of the nomination and election of the appellants as members

of its board of education and its organization in due course. Since no irregularities are pointed out in the various steps taken to organize the new district, we shall confine our inquiry solely to the constitutionality of the amended statute permitting such new districts to be created.

Without burdening this opinion with lengthy quotations from the provisions of amended section 91a, we may say, generally, that it grants additional authority to the county superintendent of schools to create new high school districts and/or alter the boundaries of existing high school districts when petitioned by certain numbers of voters. Under its provisions authority is granted, first, to detach territory from one existing district and add it to another; second, to create a new community high school district out of territory detached from one or more existing districts; third, to annex territory not within a high school district to an existing district; and fourth, to create a new community high school district out of territory detached from existing districts and also non-high school territory. In the case before the court a new community high school district was formed with territory detached from an existing district under the provisions of the second clause, which is subject to the proviso in the statute that both the new district and the remainder of the existing district shall each contain an incorporated city of at least 3000 inhabitants.

It is chiefly contended by the appellee that section 91a is a special law, and therefore unconstitutional in that it permits the formation of a new district in this case simply because the city of Lake Forest contains 3000 or more inhabitants and the city of Highland Park contains 3000 or more inhabitants, while the act by its terms denies such privileges to many districts similarly situated which do not have within their boundaries any city or village of 3000 or more inhabitants. For this reason it asserts that the provisions of the statute in question are arbitrary and unreasonable restrictions and violative of that portion of section 22

of article 4 of the constitution which prohibits the passing of local or special laws "granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." On the other hand, the appellants contend that the only provision of section 22 of article 4 dealing specifically with schools is the provision that no special or local law shall be enacted "providing for the management of common schools." These opposite contentions with reference to section 22 of article 4 were heretofore considered by this court in *People* v. *Weis,* 275 Ill. 581, where *quo warranto* proceedings were directed against the president and members of the board of education of an alleged high school district situated in Livingston, Kankakee and Grundy counties, organized under section 6 of the act of June 5, 1911. The statute there in question provided that a school township might be organized into a high school district provided it contained a school district having a population of 1000 and less than 100,000. The act further provided that the only territory, aside from the school township, which could be organized under the act into a township high school district was a part of a township or townships. This court said on page 585 of the opinion: "Thus, two adjoining townships may have identically the same population, may be possessed of the same wealth, may have the same number of cities or villages similarly located, and yet, because of the difference in the division of the two towns into school districts, one would be entitled to organize into a township high school district under this act and the other would not. A part of such town not able to organize under section 1 of the act could, however, be organized into a township high school district under section 6. No provision is made in the act for a whole township not possessing the requirements prescribed in section 1 to organize, in conjunction with a part or parts of adjoining townships, into a high school district." Referring to the reasonableness of the classification provided for in the act this court

said on page 586: "The classification made in section 1 of the act is not based upon any rational difference of situation or condition. We can perceive of no reason why a township which contains a school district of more than 1000 and less than 100,000 inhabitants can be said to differ from an adjoining township having the same population, the same wealth, the same need of a high school, the same number of cities and villages similarly located, but which has a different division of its territory into school districts. Under the provisions of this act it is impossible for a whole township, as a single unit, to organize into a township high school district unless it contains a school district of the population described in section 1, but however meager the population, and without regard to the wealth or necessities of the community, a part of any township may organize into a township high school district. By this act the inhabitants of a township containing such a school district as is described in section 1 are given special privileges which are denied to the inhabitants of other districts of like population and similarly situated."

The same contention was made in the *Weis case* as is made in the case at bar, namely, that section 22 of article 4 of the constitution has no reference to the establishment of schools. In response to that contention this court said, commencing at page 588 of the opinion: "It is contended that this court has held in a number of cases that no constitutional limitation has been placed on the legislature with reference to the formation of school districts, and our attention has been called to *Speight* v. *People*, 87 Ill. 595, *Fuller* v. *Heath*, 89 id. 296, *Land Comrs.* v. *Kaskaskia Commons*, 249 id. 578, and *People* v. *Chicago and Illinois Midland Railway Co.* 256 id. 488. The question here under consideration was not involved in any of those cases and the language there used must be considered with reference to the questions there involved. It was not intended in those cases to hold that the legislature might, if it saw fit,

provide for the organization of school districts in a part of the State, only. While, as those cases hold, no constitutional limitation has been placed on the legislature with reference to the formation of school districts, when the legislature has adopted a plan for the formation of school districts the other provisions of the constitution require that such plan shall be uniform and shall apply to all the citizens of the State similarly situated."

The reasoning and decision of this court in the *Weis case* were followed in two other cases involving the same question then pending, (*Lafferty* v. *Moore*, 275 Ill. 580, and *People* v. *Stitt*, 275 id. 593,) and were cited with approval in *Fisher* v. *McIntosh*, 277 Ill. 432, and *People* v. *Owen*, 286 id. 638. Prior to these decisions a similar constitutional question had been raised in *People* v. *Rinaker*, 252 Ill. 266, where, in holding the act of 1909 providing for the creation and management of forest preserve districts unconstitutional, this court said (p. 272) : "Counsel for the appellees insist that forest preserve districts are not among the subjects specifically enumerated in section 22 of article 4 and are therefore not within the prohibition against the passage of local or special laws. Section 22 of article 4 prohibits the passage of any local or special law granting special privileges or immunities 'to any corporation, association or individual.' Conceding that the word 'corporation,' as there used, means private corporations and not municipal bodies, is the act under consideration discriminative between citizens in that it confers special privileges on some which are denied to others similarly situated? If the power exists in the legislature to authorize the organization of corporations for the preservation of forests, it is necessary to a valid exercise of that power that the benefits of the law shall be available to all citizens similarly situated upon complying with the requirements of the act."

The appellants cite several cases in support of their contention that section 91*a* is not unconstitutional as a local or

special law. Two of these cited cases (*Speight* v. *People, supra,* and *Land Comrs.* v. *Kaskaskia Commons, supra,*) were mentioned and distinguished in a portion of the opinion in the *Weis case* above quoted. In other cases cited by them (*Maulding* v. *Skillet Fork Drainage District,* 313 Ill. 216, and *People* v. *Camargo School District,* 313 id. 321,) the statutes under consideration were held to be based upon reasonable classifications, without special restrictions or discriminations against any persons or classes. It is true, as contended by the appellants, that a classification based upon population does not, alone, make the statute a special law provided there is a reasonable ground for distinction, (*Chicago Terminal Transfer Railroad Co.* v. *Greer,* 223 Ill. 104; *Booth* v. *Opel,* 244 id. 317; *People* v. *Edmands,* 252 id. 108; *People* v. *Grover,* 258 id. 124;) but it is equally true that where a statute is not based upon any reasonable classification having a logical relation to the objects and purposes of the legislation it is unconstitutional and void. *People* v. *Wilcox,* 237 Ill. 421; *People* v. *Weis, supra; People* v. *Rinaker, supra; Bessette* v. *People,* 193 Ill. 334; *Pettibone* v. *West Chicago Park Comrs.* 215 id. 304.

From the authorities cited it will be seen that special as well as local laws are forbidden under our constitution respecting the several subjects enumerated in section 22 of article 4, (*People* v. *Wilcox, supra,*) but upon other subjects they may be constitutional even where they apply only to a portion of the people of the State, provided they apply equally to all members of a designated class and are based upon a reasonable classification having proper relation to the objects and purposes of the legislation. (*People* v. *Weis, supra.*) In other words, conceding that the special objects sought by the legislature in the enactment of section 91*a* are not forbidden by section 22 of article 4, it only remains for us to determine whether the law in question offers a reasonable basis of classification to attain the objects sought in its passage.

While the legislature may make classification the basis for legislation in proper instances, the general rule is that a classification will suffice as a basis for legislation only where such classification is based upon a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests. (*People* v. *Nellis,* 249 Ill. 12; *Greene* v. *Fish Furniture Co.* 272 id. 148; *Dawson Soap Co.* v. *City of Chicago,* 234 id. 314; *Douglas* v. *People,* 225 id. 536; *L'Hote* v. *Village of Milford,* 212 id. 418.) By the enactment of section 91a the legislature attempted to provide a method by which new community high school districts could be created by detaching territory from one or more pre-existing township or community high school districts. After providing the means of detaching such territory and creating new districts, a proviso was added following paragraph 4 of section 91a: *"Provided, that no new community high school district be created wholly or in part from territory belonging to one or more high school districts unless the new high school district and each of the remaining high school districts affected contains an incorporated city or village of at least 3000 population."* This proviso is the principal point in controversy. We must therefore consider whether the requirement that the new high school district to be created, and each of the remaining districts, must contain an incorporated city or village of at least 3000 population, is a proper classification having reasonable relation to the objects and purposes of the legislation.

What were the objects and purposes of the legislation in question? Undoubtedly the legislature was concerned primarily with the general objects and purposes of the whole School law enacted in compliance with the mandate of the constitution, (art. 8, sec. 1,) as follows: "The General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." It has frequently been

held by this court that the establishment and maintenance of high schools is a part of the general scheme of the system of free schools contemplated by this section of the constitution. It therefore follows that any classification which arbitrarily prevents any portion of the inhabitants of the State from enjoying the benefits of the act on account of restrictive provisions not reasonably related to the objects and purposes of the legislation must be construed to be invalid and such act unconstitutional. The general law providing for the creation of high school districts makes no classification of such character. No provision can be found, except in section 91a, requiring a high school district to contain an incorporated city or village of at least 3000 population. Since nearly one-third of the counties in this State do not contain a city or village with a population of 3000 or over, it can readily be seen that such a classification as the one stated prevents the inhabitants of many high school districts of this State from receiving any advantages under the law. The act in question is not based upon the total population of the new district and each of the remaining districts, but it goes further and provides, regardless of total population, that at least 3000 of such population must in each case be included within the corporate limits of a city or village. This is an arbitrary provision which has no logical connection or reasonable relation with the objects or purposes of the legislation. Its effect is to exclude the inhabitants of a great portion of the State from many of its benefits. Many community or township high school districts in the State do not contain an incorporated city or village of 3000 inhabitants within their boundaries but nevertheless should be given, if desired, the privilege of altering their high school district lines to conform to changes in population or for other reasons deemed by them important. For instance, the provisions of section 91a would permit two districts to be made of one having a total popu-

lation of 7000 so long as each of these districts contained an incorporated city or village of 3000 or more inhabitants, but would deny such change in a district containing a total population of 8000 where each of the proposed districts contained a city of only 2500 inhabitants. In the last example cited, the district to be created and the one remaining might each have a greater population, greater wealth and greater need to change their boundary lines than those in the first example, yet under the provisions of this law they would be arbitrarily excluded from its benefits because their population, while greater, was insufficiently concentrated in their two cities. It is difficult to understand what possible connection there can be between the requirements that the new district and each of the remaining districts must each contain a city or village of not less than 3000 population, and the necessity or desirability of altering boundary lines and creating new districts. There would seem to be no reason why districts which do not contain cities of 3000 population should be deprived of the right to alter their boundaries or create new districts, while other districts—some larger and some smaller in total population—are allowed that privilege simply because each contains a city of 3000 inhabitants. The distinction is purely arbitrary. Many high school districts in the State would not be able to come within the precise limitations of such a law and it would thus not operate uniformly upon all.

In our judgment the provisions of section 91a are contrary to the constitutional provision forbidding special legislation and are therefore void.

The judgment of the circuit court of Lake county is accordingly affirmed.

*Judgment affirmed.*