STATE OF IOWA ex rel. PETE WELSH et al., Appellants, v. J. N. DARLING et al., Appellees.

No. 41876.

JANUARY 17, 1933.

REHEARING DENIED JUNE 21, 1933.

Kelly, Shuttleworth & McManus and Dwight Brooke, for appellant.

Chauncey A. Weaver, for appellees.

STEVENS, J.—This is an action by the state of Iowa on the relation of Pete Welsh, superintendent of the department of parks and public property in the city of Des Moines, and Frank C. Kelly, a resident taxpayer of said city, to test the right of appellees as members of the park board of said city to hold their respective offices and also to test the validity of chapter 293-D1 of the Code of 1931, under the authority of which the said board was appointed and is claiming the right to perform the duties prescribed by the act for such officers. The questions presented and the argument of counsel cover a much wider range than we deem it necessary to consider or pass upon. The right of relators to maintain an action in quo warranto, under the facts of this case, is earnestly challenged by appellees. The ultimate vital question involved and which goes directly to the public interest is the constitutionality of the aforesaid

chapter. Each of the litigants and the public at large are directly and deeply interested in this question. We shall therefore, without deciding or expressing any opinion thereon, assume that the constitutionality of the law is properly before the court for adjudication. The propositions presented will be discussed in the order in which they are assigned by the relators and in such detail as is necessary to a full understanding and determination thereof.

Chapter 293-D1 of the Code of 1931 (sections 5813-d1 to 5813-d9) comprises nine sections. We deem it unnecessary to quote the chapter in full. The first ground upon which the validity of the statute is assailed is that it violates section 6, Article I, of the Constitution of the state of Iowa, which is as follows:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

The act, by its express terms, is applicable only to cities now or hereafter having a population of 125,000 or more, to be determined according to the last or subsequent state or federal census.

It is the claim of relators that the classification thus adopted is unreasonable, capricious, and that the purpose and object of the enactment bears no reasonable or natural relationship to population, that is to say, that the benefits, if any, to municipalities, of the law, are as directly and appropriately applicable to other cities of much less population as to the class prescribed. It is a matter of which judicial notice will be taken that the city of Des Moines alone has a population of 125,000, and it is probable that no other city of this state is likely to attain a similar population for possibly a generation. Classification, to meet the requirements of the Constitution, must be based upon something substantial — something which distinguishes one class from another in such a way as to suggest the reasonable necessity for legislation based upon such classification. Hubbell v. Higgins, 148 Iowa 36, 126 N. W. 914, Ann. Cas. 1912B 822; State v. McGuire, 183 Iowa 927, 167 N. W. 592, 593; Lee v. Hoffman, 182 Iowa 1216, 166 N. W. 565, L. R. A. 1918C, 933; Munn v. Independent School District, 188 Iowa 757, 176 N. W. 811; Owen v. Sioux City, 91 Iowa 190, 59 N. W. 3; Eckerson v. City of Des Moines, 137 Iowa 452, 115 N. W. 177; State v. City of Des Moines, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St.

Rep. 381; Haskel v. City of Burlington, 30 Iowa 236; McAunich v. Miss. & Mo. R. R. Co., 20 Iowa 338.

■ Courts are reluctant to declare legislative enactments unconstitutional, and will do so only when the violation is clear, palpable, and practically free from doubt. State v. Fairmont Creamery Co., 153 Iowa 703, 133 N. W. 895, 42 L. R. A. (N. S.) 821; Lee v. Hoffman, supra; Munn v. Ind. School District, supra; In re Pedersen's Estate, 198 Iowa 166, 196 N. W. 785; Loftus v. Dept. of Agriculture, 211 Iowa 566, 232 N. W. 412.

Necessarily, therefore, the legislature exercises a wide discretion in the determination of classifications as a basis of legislative enactments. A careful reading of the cases cited will disclose that this court will not set aside a statute upon the ground that it is in violation of the article of the Constitution under consideration, unless the invalidity is clear and practically beyond doubt. This is a concession due to the co-ordinate branch of the government, and has always been recognized and followed by this court. Therefore, is the classification in the present instance so arbitrary and unreasonable as to violate section 6, Article I, of the Constitution of this state? Is the law general and uniform in its operation, or does it grant to some municipalities or classes of citizens privileges and immunities which are denied to others? That population may be a proper basis of classification is not questioned by the relators. Is the act in question so wholly foreign and unrelated to population as to make its adoption by the legislature as the basis of classification in this instance arbitrary and unreasonable, or does the act bear some reasonable and natural relationship to that subject?

We said in State v. McGuire, supra, that:

"The order in which measures for the advancement of public welfare shall be adopted rests primarily with the lawmaking branch of the government, and a very large proportion of all our statutes involve to some greater or less extent an exercise of the legislative power of classification."

It appears from the record that the park system of the city of Des Moines comprises forty-seven separate and wholly disconnected parks. The estimated value thereof exceeds $3,000,000. The purpose and value of parks in all cities and districts having congested populations are obvious and manifest. They are a boon and comfort to the public, and are conducive to the public health and welfare.

The line of demarcation between cities of a designated population and cities of substantially smaller population may be, and no doubt often is, more or less fanciful. In a large measure, as we have already shown, this is a matter largely for legislative discretion. The improvement, equipment, and beautification of a city's parks are matters in which the whole public is keenly interested. A park board of ten members in the smaller cities and towns of the state, no doubt, would be quite unnecessary, and serve little or no purpose, but in a city of 125,000 population, with a large number of parks possessing wide areas, the convenience thereof and use by the public quite naturally presents a very different situation. As stated, the act, by its terms, applies to all cities in this state now or subsequently having a population of 125,000. As will presently appear, the mere fact that but one city, at present, meets the statutory requirements, is not fatal to the validity of the enactment. To hold that the classification in this case is unreasonable, arbitrary, capricious, and without any reasonable relationship to the purposes and objects of the enactment would, it seems to the court, be an encroachment upon the power and authority of the legislative department as fixed by the Constitution. There is, quite obviously, a close relationship between an act which makes provision for the possible equipment, management, and control of an extensive parking system and the population of certain municipalities. Trained minds might differ as to the reasonableness or advisability of a given measure. Possibly a smaller city might be equally benefited, but the legislature deemed otherwise.

Before concluding this subdivision of our opinion, reference should be made to the authorities relied upon by relators to sustain their contention at this point. State v. Garbroski, 111 Iowa 496, 82 N. W. 959, 960, 56 L. R. A. 570, 82 Am. St. Rep. 524, contains an excellent discussion of the subject of classification. In this opinion, the court clearly pointed out the distinction between laws of an arbitrary and capricious character and those of uniform application. The basis of classification in the statute there considered was so clearly arbitrary that but one conclusion was possible. The act required peddlers plying their vocation outside of cities and towns to pay an annual tax to the county. Persons who served in the Union Army or Navy were, however, excepted from the operation of the statute. The court said:

"The classification here attempted rests solely on a past and

completed transaction, having no relation to the particular legislation enacted."

Numerous cases which are cited below are reviewed by counsel, but a careful reading thereof will disclose that the respective acts considered clearly and definitely distinguish the cases from those cited above. People ex rel. Board of Education v. Read, 344 Ill. 397, 176 N. E. 284; Street Improvement Dist. v. Hadfield, 184 Ark. 598, 43 S. W. (2d) 62; Anderson v. Board of Public Instruction (Fla.) 136 So. 334; Simpson v. Matthews, 184 Ark. 213, 40 S. W. (2d) 991; Smith v. State (Tex. Cr. App.), 49 S. W. (2d), 739; L'Hote v. Village of Milford, 212 Ill. 418, 72 N. E. 399, 103 Am. St. Rep. 234; Appeal of Ayars, 122 Pa. 266, 16 A. 356, 2 L. R. A. 577; Ward v. State, 224 Ala. 242, 139 So. 416; State v. Hammer, 42 N. J. Law 435.

It should also be remembered that the rules applicable in such cases are not the same in all jurisdictions. This will be evident from a reading of the cases cited.

■ II. We are also asked to hold that the act under consideration violates section 30, Article 3, of the Constitution of this state, which is as follows:

"The General Assembly shall not pass local or special laws in the following cases:

"For the assessment and collection of taxes for State, County, or road purposes;

"For laying out, opening, and working roads or highways;

"For changing the names of persons;

"For the incorporation of cities and towns;

"For vacating roads, town plats, streets, alleys, or public squares;

"For locating or changing county seats.

"In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State; and no law changing the boundary lines of any county shall have effect until upon being submitted to the people of the counties affected by the change, at a general election, it shall be approved by a majority of the votes in each county, cast for and against it."

The point here urged is that the act is local and special in character, and in no sense of general or uniform operation.

In so far as it has immediate application to the cities of this state, the city of Des Moines alone is affected. The act, however, is by its terms extended to all cities that may hereafter attain the prescribed population. Uniformity of operation does not depend necessarily upon the number of citizens affected. If the law operates upon every person within the relation or circumstances provided for, the requirement of uniformity is met. McAunich v. Miss. & Mo. R. R. Co., supra; Haskel v. City of Burlington, supra; State v. Standley, 76 Iowa, 215, 40 N. W. 815; Tuttle v. Polk & Hubbell, 92 Iowa 433, 60 N. W. 733; State v. City of Des Moines, supra; Eckerson v. City of Des Moines, supra; nor, as already suggested, is the act rendered invalid by reason of the fact that, at the time of its adoption, the classification prescribed limits its application to a single municipality. Tuttle v. Polk & Hubbell, supra; Eckerson v. City of Des Moines, supra; State v. Standley, supra; Von Phul v. Hammer, 29 Iowa 222.

If the act in question must be found to be special or local in character, it is because its application is presently and prospectively limited to the city of Des Moines. The enactment by the legislature of the chapter may possibly have been inspired by those primarily interested in the city of Des Moines. On this point we are not advised. There is nothing, however, in the character of the act itself indicating that the legislative intent was to so restrict its application. It is possible and perhaps probable that considerable time will necessarily intervene before any other city of this state, by the process of ordinary normal growth, will attain the prescribed population. If however and when they do, the act by its very terms will at once become applicable thereto. No matter how many cities of this state shall attain the required population, all will come under the provisions of the act, and none will be excluded.

Many decisions of this court are cited and relied upon by relators to sustain their theory that the act is special and local in character. A careful examination of the cases cited below will disclose that most, if not all, of them involved statutes directly violative of the specifically enumerated prohibitions of the constitutional provision under discussion. Ex parte Samuel Pritz, 9 Iowa 30; Hetherington v. Bissell, 10 Iowa 145; Baker & Griffin v. Steamboat Milwaukee, 14 Iowa 214; Town of McGregor v. Baylies, 19 Iowa 43; Ind. School-district v. Burlington, 60 Iowa 500, 15 N. W. 295;

Stange v. Dubuque, 62 Iowa 303, 17 N. W. 518; State v. Garbroski, supra.

The act involved in State v. City of Des Moines, supra, provided for the annexation of territory to the city of Des Moines. The court held that, as it could never apply to any other city, the legislation was local in character and void. The following cases cited and relied upon from other jurisdictions are of similar import: White Construction Co. v. Beloit, 189 Wis. 5, 206 N. W. 908; Ark. Ash Lbr. Co. v. Pride & Fairley, 162 Ark. 235, 258 S. W. 335; Topeka v. Gillett, 32 Kan. 431, 4 P. 800; State v. Erickson, 140 Minn. 509, 167 N. W. 734.

Section 2 of the act, section 5813-d2, Code 1931, provides:

"Within sixty days after the taking effect of this chapter, in all cities now having a population of one hundred twenty-five thousand or more according to the last state or federal census, there shall be established in accordance with the terms of this chapter, a permanent park board for such city."

This section, it must be confessed, clearly recognizes that the present operation of the act is necessarily limited to the city of Des Moines. This is true, however, only because it alone possesses the requisite population. In this respect it differs radically from the provisions of the act considered in State v. City of Des Moines, supra. The use of the word "now" in the connection indicated is without particular significance in designating the act as special or local. The quoted section fixes the time within which the requirements of the chapter shall be met by all cities *now* having the required population. The act does not, in terms, refer to the city of Des Moines, nor is the reference to the city now having the population specified in the act, but the language is, "In all cities now having" such population. The act meets all the requirements of the Constitution as to uniformity, and is not void because local or special in its operation.

The further contention is urged by relators that the statutes under consideration are likewise void, for the reason that no machinery for the purpose of giving effect thereto in cities subsequently attaining the prescribed population is provided in the act; that the act is in consequence of such omission necessarily special and applicable to the city of Des Moines only. It must be confessed that the act has some of the infirmities common to many statutory provisions. The

act does not in specific terms make it obligatory upon cities subsequently attaining the requisite population to provide for the creation or establishment of a park board. Such duty is, nevertheless, clearly 'implied. The act is in specific terms made applicable to all cities now or hereafter having the prescribed population. The mandatory provisions of section 2, which requires cities now having a certain population to establish a permanent park board within sixty days, do not, in any sense, operate as a limitation upon cities subsequently coming within the terms of the act, nor does it tend to make the provisions thereof local in character. Such intention would seem to be clearly negatived by the following language of the third section of chapter 293-D1, section 5813-d3, Code 1931, as follows:

" * * * One member of the city council shall at all times be a member of such board, *and if any member of the city council of such city is at the head of a department of the city government having supervision of the parks of the city, such member shall by* authority of his office be the councilman who shall also be a member of said board."

At the time of the passage of the act, there was in the city of Des Moines a member of the city council who was the head of a city department. The intention to make the act uniform in its operation as well as applicable to other cities than Des Moines is made manifest by the foregoing provision of the statute. All cities within the classification established have both a library board and a school board. They may or may not have a city planning commission, but chapter 294-A1 of the Code of 1931 (section 5829-a1 et seq.) makes full and ample provision for the creation of such a commission. Authorities cited by relators from other jurisdictions at this point tend to support the contention made by relators upon the theory on which the proposition is presented and argued. But a careful reading of them will clearly disclose they do not, in the light of the interpretation herein placed thereon, in fact support relator's contention. Rosencranz v. Evansville, 194 Ind. 499, 143 N. E. 593; State v. Erickson, 160 Minn. 510, 200 N. W. 813; Henry v. Wilson, 224 Ala. 261, 139 So. 259; Mobile County v. Byrne, 218 Ala. 5, 117 So. 83; Roe v. City of Duluth, 153 Minn. 68, 189 N. W. 429; Marwin v. Board of Auditorium Commissioners, 140 Minn. 346, 168 N. W. 17; Commonwealth v. Gumbert, 256 Pa. 531, 100 A. 990.

It is suggested that the title to the enactment does not carry

out the idea that it was designed to apply to cities subsequently acquiring the required population. We think the suggestion not well taken. The language of the title makes it applicable to all cities having a population of 125,000 or more, and provides the powers and duties thereof. The title is ample. Of course, direct provision might have been made for cities subsequently coming within the classification, but it would hardly do to place so narrow a construction thereon as to deny its practical application thereto.

 III. A further ground upon which relators contend that the act in question transcends the constitutional power of the legislature is that it violates the right of municipal self-government. It is fundamental in municipal law that municipal corporations owe their origin and derive their powers from the legislature. This question was recently before us and fully discussed in Van Eaton v. Town of Sidney, 211 Iowa 986, 231 N. W. 475, 71 A. L. R. 820. No doubt, certain rights conferred by legislative authority thereon become vested in such sense that they may not be the subject of legislative interference. The right of local self-government as applied to municipal corporations forms the subject of an exhaustive discussion and review of the authorities by this court in State v. Barker, 116 Iowa 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222. The example presented in the above case related to the proprietary powers of cities and towns as distinguished from purely governmental functions.

The thought of counsel appears to be that the city of Des Moines, acting under the authority conferred by chapter 48, Laws of the Thirty-second General Assembly, has adopted and is under what is known as the commission plan of government; that the present act of which relators complain is an unwarranted and illegal attempt to interfere with the operation of the fundamental plan of the city's government; that the establishment of a park board is contrary to and out of harmony with the commission plan of government; that it seeks to deprive the people of power confided to them and inherent in government—that it violates their sovereignty. The discussion would seem to relate rather to the wisdom of the legislation than to its validity. No fundamental power of the commission plan of government is, in any direct sense at least, involved. Manifestly, the theory upon which the park board system was created by the legislature was the better improvement, maintenance, and availability of the park system in cities of the prescribed population. The park

board has nothing to do with the levy or collection of revenue. This is all left to the same officers who performed the duties in relation thereto prior to the enactment of the chapter involved. The disbursement of the park fund is confided to the park commissioners who are required to make an annual report to the city council which shall contain an accurate statement of the board's activities during the year. The board may, however, make such recommendation as it sees fit. The method provided for the selection and appointment of members of the board was obviously intended to attain the highest skill and efficiency in the administration of the system. As we shall presently point out, the powers and duties of the board are governmental and not proprietary in character. Many authorities touching the question of local self-government are cited by relators from other jurisdictions, a few of which are as follows: People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103; State v. Denny, 118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65; McQuillin on Mun. Corps. vol. 1 (1st Ed.) sections 70 and 167; People v. Albertson, 55 N. Y. 50; McQuillin on Mun. Corps. vol 1 (2d Ed.) section 353. The above-cited cases will be found illuminating and profoundly interesting on the subject of local self-government.

The limitation which relators would place upon the power of the legislature to legislate for and in behalf of cities under the commission form of government is too strict, and over-emphasizes the power of local self-government as applied to municipalities. The act does not encroach upon the fundamentals of the commission form of government nor does it interfere with the right or power of proper local self-government. The park board has no power to levy or collect taxes. Its authority so far as the revenues of the city are involved is to expend the appropriation for that purpose in the proper management and control of the public parks of the city. The head of the department of parks elected by the city continues as a member of the commission, and none of his powers or rights is impaired except as above stated. Numerically he is, of course, in the minority, but that is of no necessary significance. Whether the creation of a park board was desirable or for the best interest of the park system or the people of the cities designated was for the legislature to say and not for this court. With the wisdom or lack thereof in the creation of such board, courts have no part.

IV. Finally, relators predicate invalidity of the act upon the ground that it interferes with the management and control of

property owned and managed by cities in their proprietary capacity. As previously stated, the city of Des Moines, the only one to which it now applies, has a large number of public parks. These, with two exceptions, are maintained for the use of the public wholly without charge. No revenue is received therefrom. In the management and control of its parks, municipalities, under the rule prevailing in this state, act in a purely governmental capacity. Inc. Town of Sibley v. Ocheyedan Elec. Co., 194 Iowa 950, 187 N. W. 560; Norman v. City of Chariton, 201 Iowa 279, 207 N. W. 134; Harris v. City of Des Moines, 202 Iowa 53, 209 N. W. 454, 46 A. L. R. 1429; Hensley v. Inc. Town of Gowrie, 203 Iowa 388, 212 N. W. 714; Mocha v. City of Cedar Rapids, 204 Iowa 51, 214 N. W. 587; Smith v. City of Iowa City, 213 Iowa 391, 239 N. W. 29.

However, there appears to be some lack of harmony in the authorities on this point, but the great weight thereof supports the rule in this state. A different rule prevails in many jurisdictions, at least where the municipalities operate their parks and other similar property for revenue, and therefore in a proprietary capacity. Cornelisen v. Atlanta, 146 Ga. 416, 91 S. E. 415; Lincoln v. Boston, 148 Mass. 578, 20 N. E. 329, 3 L. R. A. 257, 12 Am. St. Rep. 601; Heino v. Grand Rapids, 202 Mich. 363, 168 N. W. 512, L. R. A. 1918F, 528; Burton v. Salt Lake City, 69 Utah 186, 253 P. 443, 51 A. L. R. 364; O'Donnell v. North Attleborough, 212 Mass. 243, 98 N. E. 1084; Hodgins v. Bay City, 156 Mich. 687, 121 N. W. 274; 132 Am. St. Rep. 546.

The question is discussed at length in State v. Barker, supra, which, in this particular, is apparently in harmony with the general rule stated above.

It appears that a fee of 25 cents on week days and 50 cents on holidays and Sundays is charged for the use of Waveland and Grandview golf links. A profit was realized by the city from the above charges in 1930 of $4,716.76 and in the year 1931 of $8,502.63. Likewise a charge of 25 cents per person using the facilities of Ashworth pool is made. The profit from this source in 1931 was $1,197.80. We gather from the record that these sums do not go into the revenues of the city, but are used wholly for the improvement or management of the properties involved. Whatever may be the effect of the aforesaid income from certain segregated and independent parks or of the bathing pool, the remaining parks of the city are wholly unaffected thereby. The question at this point is,

in part at least, one of fact. The precise question, in so far as it affects the validity of the act, has never been squarely before us. In Mocha v. City of Cedar Rapids, supra, it appeared that a charge of 10 cents for the use of the city bath house, bathing beaches, etc., was made. This court held that the charge was nominal, and that the city was not liable to damages for the negligence of its officers upon the theory that the instrumentalities referred to were employed and operated by the city in its proprietary capacity. Whether the Ashworth pool and the parks receiving a similar income should be excepted from the management of the park board we, of course, express no opinion. The only question before the court at this time is the constitutional validity of the act as a whole. The court in this case has had the aid of able and elaborate briefs upon the questions considered. It seemed to the court that, as the validity of the act in question so far overshadowed all preliminary questions urged, we have avoided discussion thereof, and confined our decision to the one vital question in the case.

The court is of the opinion that the chapter assailed is valid, and must be sustained.—Affirmed.

KINDIG, C. J., and EVANS, ALBERT, MITCHELL, ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.

UTTERBACK, J., took no part in the decision of this case.