TOLERTON & WARFIELD COMPANY, Appellant, v. IOWA STATE
BOARD OF ASSESSMENT & REVIEW et al., Appellees;
R. T. STOUP et al., Interveners.

No. 43417.

DECEMBER 15, 1936.

Milchrist, Schmidt & Marshall, for appellants.

Edward L. O'Connor, Attorney General, Clair E. Hamilton, Asst. Attorney General, Frank F. Messer, John Connolly, Jr., and Irvin Schlesinger, Special Asst. Attorneys General, for appellees.

HAMILTON, J.—The 46th General Assembly of Iowa enacted a law known as the "Chain Store Act of 1935" which became effective as a law on May 8, 1935, by publication, as provided by law. (Chapter 75, Laws 46th General Assembly; also appears as Chapter 329-G1, Sections 6943-g1 to 6943-g20, inclusive, Code of Iowa, 1935.) The plaintiff, Tolerton & Warfield Company, a corporation, with its principal place of business at Sioux City, Iowa, engaged in the business of operating a chain of grocery stores under the name of "Council Oak Stores", fifty of which are located in the state of Iowa, and one other store or service station, or a total of 51 stores in this state, on the 17th day of June, 1935, brought this action in equity on its own behalf and on behalf of all other persons or groups acting as a unit as defined by said law, praying for an order restraining and enjoining the Iowa State Board of Assessment and Review and its individual members and officers, and Leo J. Wegman, Treasurer of the State of Iowa, from the collection of said tax, asking that a temporary writ issue until the case could be determined on its merits, and that upon final hearing the court is asked to determine that said act is unconstitutional as violative of

(a) Article I, section 6, and Article III, section 30 of the Constitution of the State of Iowa;

(b) Article III, section 26, Article III, section 29 of the Constitution of the State of Iowa;

(c) Fourteenth Amendment to the Constitution of the United States.

On July 1, 1935, interveners, R. T. Stoup and George J. Schaefer, a copartnership, operating a chain of three cafes in Sioux City, Iowa, under the firm name and style of Stoup & Schaefer, joined with plaintiff in asking the same relief. On July 10, 1935, on stipulation of parties, the court entered an or-

der requiring the State Treasurer to segregate and hold said fund or tax collected intact and apart from other funds belonging to the state, pending the determination of the suit and until further order of the court, meanwhile payment of the tax to be without prejudice to any of the parties. On August 21, 1935, answer was filed, admitting certain allegations of the petition and specifically denying said act was unconstitutional. Trial to the court was begun on October 21, 1935, and continued from day to day until concluded, and the cause was submitted, and on November 9, 1935, the court entered of record his written findings and conclusions, holding the act valid, and on November 20, 1935, decree was entered of record accordingly, from which findings, conclusions and decree of the court plaintiff and interveners have appealed to this court.

The issues as set forth in appellants' brief are as follows:

"I. It is vague, incomplete, defective, unworkable and incapable of enforcement in that;

"(a) It is impossible to determine what constituted a 'Chain Store', as set out in Section 2(g); and

"(b) It is impossible to determine whether the tax is intended to be cumulative or non-cumulative, under Section 4(a).

"II. The Act denies equal protection of the laws, as defined by the Fourteenth Amendment of the United States Constitution, and Article I, Sections 1 and 6, and Article III, Section 30 of the Constitution of the State of Iowa, by reason of:

"(a) An unreasonable classification on the basis of:

"(1) The form of business organization, in that it distinguishes between voluntary and integrated chains.

"(2) The nature of the articles dealt in, exempting such as farm products, coal, ice, lumber, grain, feed and building materials.

"(3) Whether a restaurant is connected or not connected with a hotel.

"(4) Whether a business is located in an incorporated or unincorporated town and all stores are within six miles of each other.

"(b) An unreasonable classification, on the basis of:

"(1) A graduated per centum of gross sales within the doctrine of Stewart Dry Goods Company v. Lewis, 79 L. Ed. 1054; 55 S. Ct. 525.

"III. The Act is confiscatory and in violation of Article I, Sections 1 and 6, and Article III, Section 30 of the Constitution of the State of Iowa."

In passing upon the constitutionality of an act of the legislature, certain well-defined principles must be kept in mind. These are familiar to the legal profession and have been so often stated that we will not repeat them. They may be found in the following authorities: Tenth Amendment, U. S. Constitution; McGuire v. Railway, 131 Iowa 340, 349, 108 N. W. 902, 33 L. R. A. (N. S.) 706; Stewart v. Board of Supervisors, 30 Iowa 9, 13, 1 Am. Rep. 238; Loftus v. Dept. of Agriculture, 211 Iowa 566, 232 N. W. 412; State v. Fairmont Creamery Co., 153 Iowa 702, 706, 133 N. W. 895, 42 L. R. A. (N. S.) 821; State v. Manning, 220 Iowa 525, 530, 259 N. W. 213; Priest v. Whitney Loan & Trust Co., 219 Iowa 1281, 1286, 261 N. W. 374.

 The Iowa Chain Store Tax Act just underwent its first constitutional test through the Federal District Court, composed of three judges, (Great Atlantic & Pacific Tea Co. v. Valentine, 12 Fed. Supp. 760) with the result that section 4(b) of the act was declared unconstitutional as violative of the 14th Amendment to the Federal Constitution, and a similar provision (Section 6, Article I) of our State Constitution. This decision was affirmed by the Supreme Court of the United States (57 S. Ct. 56, 81 L. Ed............) upon authority of Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 79 L. Ed. 1054, 55 S. Ct. 525. This pronouncement of the highest court in the land as to matters involving the Federal Constitution is binding upon the state court, and following that decision we are compelled to hold section 4(b) of said act unconstitutional for the reasons announced in the opinion of the United States District Court, 12 Fed. Supp. 760, 767, supra.

 This leaves little of a legal, controversial nature for this court's determination. The unit tax provisions contained in section 4(a) of the act must be upheld as a valid exercise of the power of the legislature in imposing an occupational tax on persons engaged in a particular system of doing business. State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464; Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. Ed. 929, 85 A. L. R. 699; Fox v. Standard Oil Co., (W. Va.) 294 U. S. 87, 55 S. Ct. 333, 79 L.

Ed. 780. These cases announce no new principle of law as applied to a tax on business as such. It is but the application of an old principle long recognized in this state. Scottish U. & N. Ins. Co. v. Herriott, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548; McAunich v. Railroad Co., 20 Iowa 338; Primghar State Bank v. Rerick, 96 Iowa 238, 64 N. W. 801; Warren v. Henly, 31 Iowa 31; Herriott v. Potter, 115 Iowa 648, 652, 89 N. W. 91.

In the case State ex rel. Welsh v. Darling, 216 Iowa 553, 555, 246 N. W. 390, 391, 88 A. L. R. 218, the court had under consideration section 6 of Article I of our State Constitution, which provides that: ''All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.'' Justice Stevens in the opinion states:

''Classification, to meet the requirements of the Constitution, must be based upon something substantial—something which distinguishes one class from another in such a way as to suggest the reasonable necessity for legislation based upon such classification. (Citing a long list of cases) * * * Necessarily, therefore, the legislature exercises a wide discretion in the determination of classifications as a basis of legislative enactments.''

The same rule with reference to classification of property for taxation is recognized in the Jackson case, supra, wherein the United States court says:

''The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 L. Ed. 892, 10 S. Ct. 533; Southwestern Oil Co. v. Texas, 217 U. S. 114, 54 L. Ed. 688, 30 S. Ct. 496; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 54 L. Ed. 883, 30 S. Ct. 578. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. American Sugar Ref. Co. v. Louisiana, 179 U. S. 89, 45 L. Ed.

102, 21 S. Ct. 43, or if any state of facts reasonable can be conceived to sustain it.'' See also the case of Brown-Forman Co. v. Kentucky, 217 U. S. 563, 573, 54 L. Ed. 883, 887, 30 S. Ct. 578.

That the chain store system of conducting a business has superior advantages over other methods is quite evident from the rapidity in growth of the system.

''The reason for it must therefore be substantial, and if it be so universal in the practice of the business it would seem not unreasonable if it be adopted as the basis of governmental action.'' Metropolis Theatre Company v. Chicago, 228 U. S. 61, 57 L. Ed. 730, 33 S. Ct. 441.

Many of the differences and superior advantages between this method of conducting business and the ordinary independent store, the large department stores and even the so-called voluntary chains, are pointed out in the cases above cited and such differences appear from the evidence in the instant case. It is also shown that these advantages are more pronounced in some respects as the number of units increase, and in this, basis is found for graduating the unit tax upward with the increase in the number of stores. Fox v. Standard Oil Company, 294 U. S. 87, 79 L. Ed. 780, 55 S. Ct. 333, 338. In the last case, Mr. Justice Cardozo, speaking for the court, said:

''A chain, as we have seen, is a distinctive business species with its own capacities and functions. Broadly speaking, its opportunities and powers become greater with the number of the component links, and the greater they become, the more far-reaching are the consequences, both social and economic. For that reason, the state may tax the large chains more heavily than the small ones, and upon a graduated basis, as indeed we have already held. (Citing cases.) Not only may it do this, but it may make the tax so heavy as to discourage multiplication of the units, to an extent believed to be inordinate, and by the incidence of the burden develop other forms of industry. (Citing cases.)''

The same principles apply to exemptions. All that is required to satisfy the law is that all owners of chain stores similarly situated be treated alike.

The provisions of this act applying to exemptions were fully

considered by the three-judge Federal District Court in the Great Atlantic & Pacific Tea Co. case, supra, and Judge Dewey, in discussing the exemptions said:

"Can there be found in the businesses that are exempted a reasonable distinction from those that are taxed, or can a state of facts reasonably be conceived to sustain the classification with these exemptions? * * * Witnesses for the defendants have pointed out their reasons for believing that the chain stores exempted, including hotels, do not possess all the advantages enjoyed by the chains of the classes represented by claimants and interveners and have given their opinions as to certain economic and social differences. Also that hotel restaurants should be considered as integral parts of the hotel, maintained principally for the convenience of guests and not in competition with chain restaurants. These are debatable questions that may have been considered by the legislature. We are content with the finding that the chain stores exempted sell in general a different line of merchandise or service than do the complainants or interveners, and that the amount of any goods sold by the latter in competition are negligible in size or amount. * * * If the legislature can lay a license tax on a certain kind of business, it may group certain lines and omit others. * * * We are satisfied that the exemptions do not create an arbitrary classification for the imposition of an occupational tax or license, and do not violate constitutional limitations, either of state or nation."

The rule is well established that legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it. Rast v. Van Deman & L. Co., 240 U. S. 342, 60 L. Ed. 679, 36 S. Ct. 370, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455. The exemptions are found in section 3 of the act, chapter 75, Acts 46th General Assembly, and in section 6943-g3 of the 1935 Code. The first, second and fourth exemptions refer to persons conducting certain lines of business, from a mere reading of which the distinction and difference becomes obvious. The exemption in subdivision three refers to persons dealing in the products of coal, ice, lumber, grain, feed and building materials. Such stores are not exempt unless during the taxable year the proceeds from the sale of the products mentioned exceed 95% of the total retail sales. There is no evidence in the record that the appellants deal materially in any of the products mentioned in

this section. As to coal and ice, they are more or less seasonable articles and, as to all said products, the field for patronage is more or less limited. No doubt other differences could be pointed out by persons trained in the subject matter of taxation. Much has been said and written on this subject, and statistics have been compiled and were available to the lawmaking body and were no doubt considered by the legislature. As to some of the matters of difference pointed out by the witnesses at the hearing in the trial below reasonable minds might differ, and they fall within what his honor, Mr. Justice Evans, refers to as the "zone of fair debate". This applies more especially to exemption No. 5, exempting cafes operated in connection with chain hotels. We think, however, there is a substantial difference between a chain devoting its exclusive time to a single service, such as the operation of a chain of cafes or restaurants, and one who, as the evidence shows in this case, is operating a chain of hotels and in connection therewith maintains coffee shops, cafes and dining rooms as added attractions, more especially for the convenience of the guests of the hotel than for the general public. By section 6943-g18 it is provided that the law "shall not apply to any stores owned or operated by any person, firm, or corporation when all of said stores so owned or operated, are located in unincorporated villages and no store is more than six miles distant from every other store so owned or operated," and appellants cite the case of Liggett Co. v. Lee, supra, wherein the court held the tax invalid which made a distinction because of a county line. We do not look upon this exemption as related solely to location. Manifestly, the type of business, opportunity for growth and development or expanse of business and the natural limitations incident to stores in unincorporated villages furnish ample reason for the distinction and for exempting such stores from the operation of the law. The law under consideration in the Liggett case, supra, exempted filling stations engaged exclusively in the sale of gasoline or other petroleum products, and this exemption was upheld. We are satisfied that the matter was clearly within the power of the legislature, and the court is not warranted in condemning the classification or selection of the objects of taxation where the power to enact the measure exists. The court deals only with power, not with the expediency of the law. "Collateral purposes or motives of a legislature in levying a tax of a kind within the reach of its lawful powers are matters beyond the scope of

judicial inquiry." Magnano Company v. Hamilton, 292 U. S. 39, 78 L. Ed. 1109, 1114, 54 S. Ct. 599, 601.

■■■ Appellants' contention that there is such uncertainty and ambiguity in the language of the act, as to what constitutes a chain store, and as to whether or not the tax is intended to be accumulative, as to render the act unworkable and therefore void, is not without some merit. In attempting to avoid evasion of the law the definitive provisions of the act are somewhat involved and far from models of clarity of expression. Appellants are not in a position to raise this question, however, as they allege in the petition and concede in proof that they are operating chain stores as defined by the act. As to whether or not the graduated unit tax is intended to be accumulative must be determined from a consideration of the entire act, keeping in mind the purpose of the act to impose an occupation tax upon persons engaged in operating a system of chain stores in this state, the rate of tax to be determined on a graduated scale according to the number of stores or links in the chain. We think it may fairly be said to appear that instead of increasing the tax upon each additional store in excess of one, the legislature saw fit to apply the same rate per store until the number exceeded ten, and to step up the rate at each multiple of ten until the number went beyond fifty and to apply the same rate to all within each bracket of ten, and to all above fifty the same rate, regardless of how far the number of units might exceed fifty. The intent and purpose of the legislature in this respect could have been much more clearly expressed, but when we consider the aim and purpose of the legislature, we find no such uncertainty as would warrant the court in holding the law invalid on this ground. A law should not be held invalid as unworkable because of uncertainty of meaning, unless there is no other reasonable alternative.

The decree of the trial court insofar as it holds subdivision (b) of section 4 of said act valid is therefore reversed. The holding of this portion of the act invalid does not affect the remainder of the act. Davidson Bldg. Co. v. Mulock, 212 Iowa 730, 756, 235 N. W. 45. The act itself also contains a saving clause (section 19). In all other respects the decree of the trial court is affirmed.—Reversed in part, affirmed in part, and remanded.

PARSONS, C. J., and MITCHELL, ANDERSON, KINTZINGER, RICHARDS, DONEGAN, ALBERT, and STIGER, JJ., concur.